*538 TEXTO COMPLETO DE LA RESOLUCION
Clemente Santisteban, Inc., nos solicita la revisión de la determinación de la Junta de Subastas del Departamento de Recursos Naturales (Junta de Subastas), alegando que ésta llevó a cabo un procedimiento de subasta contrario a las disposiciones reglamentarias y que acogió determinaciones de hechos que no están sostenidas por evidencia sustancial.
Tanto el Procurador General, en representación del Departamento de Recursos Naturales, como Casco Sales Company, Inc., uno de los postores favorecidos con la buena pro de la subasta, presentaron escritos en oposición al recurso.
Consideradas las posiciones de las partes y el expediente, a la luz del derecho aplicable, procede denegar el recurso.
-I-
Los hechos medulares que enmarcan la controversia, según surgen del expediente, son los siguientes. El 22 de febrero de 2000, el Departamento de Recursos Naturales publicó una convocatoria a la subasta número JSF-2000-133-014 para la adquisición de siete (7) tractores para el Negociado del Servicio Forestal. Según la invitación a la subasta, la entrega de los pliegos se realizaría desde el 23 de febrero hasta el 29 de febrero de 2000 de 8:00 A.M. a 3:30 A.M. Las ofertas de los licitadores serían aceptadas en la División de Subastas de la agencia en o antes del 17 de marzo de 2000 hasta las 9:20 A.M. Se indicó, además, que el mismo día 17 de marzo a las 9:30 A.M. se abrirían las ofertas presentadas.
En lo que nos concierne, la invitación a la subasta requería una garantía de licitación que debía ser prestada en el mismo momento de presentar la oferta o anualmente mediante una suma global. La garantía de licitación requerida era la equivalente al 15% del total de la oferta.
Comparecieron como licitadores en la subasta Casco Sales, Inc.; Clemente Santisteban, Inc.; Kane Caribbean, Inc.; G.T. Corp. y DIVEQCO.
Como garantía de licitación, Clemente Santisteban, Inc. presentó un documento de Seguros Triple S, Inc., la cual se comprometía a pagar "the sum of 10% of bid amount not to exceed forty seven thousand two hundred fifty dollars and 00/100. ($47.250.00)". Apéndice del recurso, pág. 22.
El 17 de marzo de 2000 a las 3:59 P.M., luego de la apertura de las ofertas, Clemente Santisteban, Inc. presentó ante la División de Subastas una comunicación de Seguros Triple S expresando que la garantía de licitación (bid bond) emitida a Clemente Santisteban, Inc. debió indicar 15% y no el 10%. Además, aclaraba que la cantidad por la cual era responsable era aún más de la necesaria para la oferta de su cliente. El 14 de abril de 2000, la Junta de Subastas emitió aviso de adjudicación, notificando como licitadores agraciados a Casco Sales, Inc. y Kane Caribbean, Inc. y rechazando la oferta de Clemente Santisteban, Inc. Como motivo del rechazo, se expresó que éste incumplió con el requisito del quince por ciento (15%) en la fianza de licitación, puesto que entregó por un diez por cielito (10%).
Inconforme, Clemente Santisteban, Inc. presentó ante la Junta de Revisión de Subastas Formales del Departamento de Recursos Naturales una impugnación de subasta. Dado que dicha Junta no tomó acción alguna al respecto, presentó este recurso de revisión. Alega que erró la Junta de Subastas al llevar a cabo un procedimiento de adjudicación contrario a su reglamento, al no verificar diligentemente las garantías sometidas *539 y dejar de anotarlas en el formulario provisto para ello. Aduce que de haberse realizado tal verificación, se hubiese notado que la garantía presentada por él era de cuarenta y siete mil doscientos cincuenta dólares ($47,250.00), cifra que representaba más del veinticinco por ciento (25%) del total de la oferta. Alega, además, que erró la Junta de Subastas al acoger determinaciones de hechos que no están apoyadas por evidencia sustancial, ya que es incorrecto que su compañía entregó una garantía por un diez por ciento (10%) en lugar del quince por ciento (15%). Finalmente añade que la oferta del lidiador favorecido, Casco Sales, Inc., además de ser más costosa que la suya, establece una entrega en 45 a 60 días, lo que incumple con los términos e instrucciones generales de la subasta. En su oposición, el Departamento plantea que conforme las condiciones de la invitación a la subasta no podía aceptarse oferta o enmienda a ésta que llegase pasada la hora de radicación. Señala que el recurrente no sometió las ofertas de los otros licitadores, por lo que este Tribunal no está en condiciones de determinar si la decisión cuestionada está respaldada por evidencia. Casco Sales, Inc. también se opuso, refutando algunos de los errores señalados por el recurrente.
-n-
Sabido es que conforme nuestro ordenamiento jurídico, la función revisora de los tribunales con respecto a las determinaciones de los organismos administrativos es una de carácter limitado. Las decisiones de los organismos administrativos merecen deferencia de los tribunales si las mismas están sostenidas por evidencia sustancial que obre en el expediente. Las conclusiones de derecho serán revisables en toda su extensión. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. see. 2175; Metropolitan S.E. v. A.R.P.E., 138 D.P.R. 200 (1995). El récord o expediente administrativo constituye la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior. Sección 3.18 de la L.P.A.U., 3 L.P.R.A. see. 2168. Los tribunales deben limitarse a determinar si la agencia obró arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. Fuertes v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). En armonía con los principios antes esbozados, se reconoce que existe una presunción de legalidad y corrección a favor de las decisiones administrativas, por lo cual sobre la parte que impugna la determinación de la agencia recae el peso de probar que la misma fue arbitraria, irrazonable, errónea o que se tomó en ausencia de evidencia sustancial. A.R.P.E. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones, 124 D.P.R. 858, 864 (1989).
De conformidad con lo que establece la Ley de Procedimiento Administrativo Uniforme, los procedimientos de adjudicación de subastas serán informales y su reglamentación y términos serán establecidos por las agencias. Sección 3.19; 3 L.P.R.A. see. 2169. Se ha dispuesto, jurisprudencialmente, que al adjudicar una subasta, la agencia tiene el deber de exponer las bases de su decisión, de forma que pueda ejercerse efectivamente el derecho de revisión judicial. L.P.C. & D, Inc. v. Autoridad de Carreteras y Transportación, _ D.P.R. _ (2000); 2000 J.T.S. 9, pág. 472.
En función de la autorización provista en su ley orgánica, el Departamento de Recursos Naturales aprobó el Reglamento para la Adquisición de Materiales y Servicios no Profesionales, Reglamento Núm. 5556 (el Reglamento), el cual dispone la forma y manera en que dicha agencia efectuará sus compras. El Reglamento dispone la utilización del proceso de subasta formal cuando la compra de bienes o contratación de servicios no profesionales exceda la cantidad de $24,999.99 y no concurra alguna de las condiciones eximentes que permiten las subastas informales u otros métodos dispuestos en el Reglamento. Artículo 13.85. Contiene en términos generales, entre otras, normas sobre el pliego de subastas, la presentación de las ofertas, las enmiendas, el acto de apertura, la evaluación y la adjudicación de la subasta.
Consideremos los planteamientos de las partes, conforme las disposiciones reglamentarias aplicables.
-III-
La Junta de Subastas rechazó la oferta del recurrente porque no cumplió con los requisitos de la garantía de licitación al entregar un documento por 10% en lugar de 15%.
*540 El artículo 16 del Reglamento regula lo referente al pliego de las subastas, sus instrucciones, especificaciones, términos y condiciones y la manera en que éstas serán informadas a los licitadores. En particular, el inciso 16.9 regula los términos y condiciones que deben estar contenidos en el aviso de subasta, requiriendo, entre otra información, la siguiente: garantía de licitación (bid bond), fianza de ejecución (performance bond), referencias, muestras.
Respecto a la subasta que nos ocupa, el acápite 9 de los términos y condiciones de la invitación contiene las especificaciones relacionadas a la garantía de licitación. Esta establece:

“La garantía de licitación será un respaldo provisional que presentará el licitador con el propósito de asegurarle al Departamento de Recursos Naturales y Ambientales que habrá de sostener su oferta durante todo el procedimiento de la subasta.

La garantía de licitación se presentará a favor del Secretario de Hacienda o del Departamento de Recursos Naturales y Ambientales en una de la siguientes formas:

La garantía se presentara en el mismo momento de presentar la oferta o anualmente mediante una suma global. Se requiere una garantía de licitación equivalente al 15% del total de la oferta, o por la cantidad de $

Apéndice del recurso, pág. 10.
Clemente Santisteban, Inc. presentó con su oferta una garantía de licitación que disponía: "10% of Bid Bond amount not to exceed forty seven thousand two hundred fifty dollars and 00/100- ($47,250.00)". Tal como está redactada la garantía, incumplió con lo requerido en los términos y condiciones informados a los licitadores. Esta dispuso el 10%, cantidad que no excederá del tope de $47,250.00. Esto es, la cantidad global incluida es del máximo que pagaría Triple S en el caso que tuviera que cumplir con el 10% que garantizó. El lenguaje utilizado en el documento no sostiene la teoría del recurrente a los efectos de que al presentar una garantía con un tope de $47,250.00 cumplía con más del 15% exigido para la subasta. Esa cantidad es mayor, pero se ofreció como máximo del 10% de la oferta. La agencia no podía interpretar lo que sugiere el recurrente, cuando Triple S utilizo un lenguaje que no fue el requerido. Tan es asi, que posteriormente, luego de la presentación y apertura de las ofertas, sometió una carta aclaratoria para indicar que donde decía 10% debió decir 15% y que la cantidad en garantía cumplía con el margen de seguridad.
El Departamento estaba impedido por su Reglamento de aceptar la posterior aclaración. El recurrente cataloga la carta aclaratoria como una fe de errata y no una enmienda a la oferta original, por lo que argumenta que la corrección debe ser permitida, aun cuando fue presentada luego de la apertura de las ofertas. En las circunstancias de este caso, no se trata de un error de número sin consecuencia alguna. Se trata de un cambio en el por ciento y de una aclaración sobre el alcance de la garantía, según originalmente presentada. Mediante la modificación, se eliminó el que la garantía fuese objeto de interpretaciones diferentes a lo que se expuso en el texto inicial, como la que formula la agencia y la que propone Clemente Santisteban, Inc.
El artículo 17 del Reglamento dispone que la fecha límite para entregar las ofertas podrá ser en o antes del día y hora de la apertura y que todo sobre que contenga una oferta y que sea recibido con posterioridad a la fecha y hora de la apertura, será devuelto al remitente sin abrir. En cuanto a la presentación de enmiendas a las ofertas, el artículo 17.10 del Reglamento las autoriza, siempre que sean realizadas antes del acto de la apertura. Dispone dicho artículo que las enmiendas tardías, o sea, presentadas después de la fecha y hora establecida para la entrega de las ofertas, no serán consideradas.
*541 Según el expediente, la carta de Seguros de Triple S, corrigiendo lo expuesto en la garantía de licitación, fue presentada el 17 de marzo de 2000 a las 3:59 P.M., cuando ese día, hasta las 9:20 A.M., culminaba el período para la entrega de las ofertas.
Pasado dicho término, y una vez abiertas las ofertas, la Junta de Subastas no podía permitir a un licitador hacer cambios o aclaraciones sustanciales en su propuesta. Habiendo presentado Clemente Santisteban el cambio en la garantía de su oferta pasado el término, no erró la Junta al evaluar su propuesta tal como fue presentada y no bajo el cambio posterior. La decisión de la Junta, al rechazar la propuesta del recurrente, esta sostenida en el expediente.
La garantía de licitación es un requisito importante para la evaluación de las subastas. Es el medio por el cual la agencia se asegura del cumplimiento de la obligación contraída por el licitador de que sostendrá su oferta. Artículos 9.17 y 9.19 del Reglamento. Así se le informó claramente a los licitadores en los términos y condiciones de la subasta en cuestión. Siendo parte sustancial de la oferta, su lenguaje debe estar claro y no quedar sujeto a interpretaciones. En evitación de falta de claridad en las ofertas, lo que puede ir en contra de los mejores intereses de la agencia, el Reglamento dispone que "no se considerarán ofertas que contengan frases, párrafos o comentarios que hagan que la oferta sea susceptible a interpretaciones ambiguas". Artículo 1719 (h). Por tanto, si el lenguaje de una garantía se presenta con determinado por ciento, no corresponde a la Junta de Subastas otorgar un alcance diferente.
No tiene razón el recurrente al señalar que la agencia violó su Reglamento al no realizar un estudio minucioso de la eficacia de la garantía. Cita varias disposiciones reglamentarias sobre las evaluaciones y verificaciones de las garantías por los funcionarios que intervienen en las subastas. Argumenta que un estudio minucioso hubiese reflejado que su garantía fue por $47,250.00, que representa más del 25% del total de la oferta.
Esa explicación del recurrente resulta de su propia interpretación de la redacción del documento de garantía. Como previamente señalado, según éste, la cifra de $47,250.00 se proveyó como tope al 10% de la cantidad de la subasta y no como cantidad independiente que garantizaría ésta. Para evitar inferencias o interpretaciones sobre los datos que proveen los licitadores, es que se requiere que el lenguaje de las ofertas no sea ambiguo o sujeto a aclaraciones posteriores en asuntos medulares. Debido a que el lenguaje no disponía lo que dice el recurrente, fue que se sometió la carta por Triple S con lo que debió indicar la garantía y con una aclaración de su responsabilidad. No hay base alguna para sustentar que la Junta de Subastas o los funcionarios pertinentes no efectuaron la evaluación que correspondía, o que actuaron de manera irrazonable, ilegal o arbitraria.
Por último, Clemente Santisteban, Inc. alega que la Junta de Subastas actuó de forma ilegal al adjudicar la subasta a Casco Sales, Inc. cuando éste incumplió con el término de entrega en treinta (30) días y presentó una oferta más cara que la suya.
No estamos en condiciones de pasar juicio sobre el cumplimiento de Casco Sales, Inc. con el término de entrega y cómo la Junta de Subastas evaluó a los licitadores al respecto. Tampoco tenemos constancia en el expediente de la cuantía de la oferta de los licitadores para efectuar los cálculos que presenta el recurrente. Es claro que la Junta de Subastas tiene discreción para determinar cómo se protegen mejor los intereses de la agencia y que corresponde a quien impugna la adjudicación demostrar que abusó de su discreción.
El objetivo fundamental de las subastas es proteger el erario público consiguiendo la construcción de obras y la adquisición de servicios de calidad para el gobierno al mejor precio posible. Para ello, es necesario fomentar la competencia libre y transparente entre el mayor número de licitadores posibles. En la obtención de ese propósito, el artículo 18.5 del Reglamento dispone que la adjudicación de las subastas de compras se hará a favor del licitador responsable que cumpla con las especificaciones, que cumpla con los términos y condiciones y demás requisitos establecidos en el pliego de la subasta y que cotice el precio más bajo. Es cierto que el precio *542 es un aspecto fundamental en la adjudicación de la subasta, pero no es el único, sino uno de los factores que tiene que tomar en consideración la Junta de Subastas al hacer su adjudicación. En este caso, se sustentó en el expediente y en el Reglamento el rechazo de la oferta de Clemente Santisteban, Inc., mas no se ha sustentado el incumplimiento de Casco Sales, Inc. de manera que proceda la intervención de este Tribunal con la adjudicación.
No habiéndose demostrado la comisión de los errores planteados por el recurrente, se deniega la expedición del recurso.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 2001 DTA 1
1. Según el Diccionario General Ilustrado de la Lengua Española, Vox, Ira Ed., Bibliograf., Barcelona, 1990, pág. 502, fe de erratas significa "lista de las erratas de un libro, inserta en el mismo con la enmienda que de cada una debe hacerse".