Roberto E. Fuertes y otros, apelantes y peticionarios, *v.* Administración de Reglamentos y Permisos, etc., apelados y recurridos; Puerto Rico Seven, Inc., concesionario y recurrido.

*Número:* CE-91-828 *Resuelto:* 17 de diciembre de 1993

*Roberto Fuertes Thillet, Belén Bazán González*, abogados de los apelantes y peticionarios; *Roberto Santana Aparicio, Russell A. Del Toro* y *Leticia Pabón Ortiz*, de *Del Toro & Santana*, abogados de los apelados y recurridos; *Lydia Milagros Rodríguez Cruz*, abogada de la Junta de Apelaciones sobre Construcciones y Lotificaciones.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La calidad de vida en nuestros grandes y apretados centros urbanos se agrava cada vez más por la congestión vehicular y la escasez de áreas verdes de recreo. Los organismos gubernamentales encargados de atender y remediar estos males mediante planificación adecuada no siempre han tenido éxito.

## I

El Ing. Carlos Rodríguez —propietario de un solar ubicado en la Calle Estado Núm. 700, esquina Fernández Juncos, Santurce, distrito zonificado comercial (C–2)— decidió construir un edificio comercial de dos (2) plantas para dedicarlo al uso de oficinas profesionales, excepto médicas. No obstante proyectar exclusivamente ese uso, el 5 de mayo de 1989 el Arq. Jorge Fossas presentó en la Administración de Reglamentos y Permisos (A.R.PE.) una Solicitud de Conformidad con el Reglamento de Zonificación (Núm. 88–18–C–732–SPA) para obtener una *variación* que fuera consistente en disminuir el número requerido de estacionamientos *para todo el edificio* original que se construiría y, además, reducir la distancia reglamentaria del patio posterior. El 25 de agosto, A.R.PE. concedió la variación a base de la concepción original, esto es, que el edificio se utilizaría *todo* para oficinas profesionales, excepto médicas. Mediante esa acción se disminuyó el número requerido de estacionamientos de quince (15) a doce (12).

Posteriormente, el ingeniero Rodríguez, mediante permiso otorgado el 28 de diciembre de 1988 (Solicitud Núm. 88-18-G-556-SPA), inició su construcción, de dimensiones de 61'-6" por 41'-3". Durante la misma, a partir de 5 de abril de 1989, Pablo Morales, vecino y miembro de la Asociación de Residentes de Miramar, Inc. (Asociación), solicitó urgentemente la intervención de A.R.Pe. aduciendo que la construcción violaba el requisito de patio delantero respecto a la Calle Estado. El 22 de mayo, Roberto Fuertes, otros vecinos de Miramar y el párroco de la Academia Perpetuo Socorro, comunicaron también a A.R.Pe. su oposición al establecimiento de un negocio que vendiera bebidas alcohólicas en el edificio y solicitaron que se les informara si A.R.Pe. había concedido algún permiso para tal uso.

En respuesta a estas oposiciones, el 1ro de junio el Director Regional de A.R.Pe., Ing. Calixto Lebrón Monclova, le informó a Fuertes que el edificio tenía aprobación para ser utilizado en sus dos (2) plantas para oficinas profesionales, excepto médicas. Además le indicó que A.R.Pe. mantendría vigilancia e iniciaría la acción correspondiente en caso de que se estableciera otra actividad distinta a la aprobada en el anteproyecto.

Así las cosas, el 30 de agosto, el ingeniero Rodríguez radicó en A.R.Pe. la Solicitud Núm. 89-18-E-532-SPC, *para remodelar el interior de la primera planta*. La aprobaron ese día y la expidieron el 13 de septiembre. En octubre, el Arq. Felipe A. Amador, *en representación de Puerto Rico Seven, Inc.*, pidió el permiso de uso. (Solicitud Núm. 88-18-9-556-SPC). Lo aprobaron el 6 de octubre y, naturalmente, *para el uso propuesto de oficina*. El 1ro de diciembre, el Director Interino de la Oficina Regional de A.R.PE. en San Juan *dejó sin efecto* ese permiso hasta que se celebrara una vista administrativa el 18 y el 19 de diciembre.

Estructuralmente hablando, según construido, el edificio posee un patio *delantero* hacia la Ave. Fernández Juncos que se usa como área de estacionamiento para once (11) vehículos, incluyendo uno (1) para personas impedidas. Con referencia a la mencionada vía pública, su lateral derecho colinda con un solar vacante; el lado izquierdo —correspondiente al patio delantero hacia la Calle Estado— queda pegado a la acera, y el posterior, un patio de 12'–10", llega hasta la colindancia con el Solar Núm. 704, donde enclava una residencia de dos (2) plantas. Este último solar, al igual que el resto de las propiedades en la calle hasta el Expreso Muñoz Rivera y la Carr. Núm. 2, se encuentra zonificado R–5.

Con relación a la Calle Estado, existe un *acceso* al área del *estacionamiento*; la pared colindante con la acera es sólida, sin ninguna entrada al negocio; en la pared posterior existe una sola puerta de acero (no es de uso público); en ese patio hay otro espacio (número 12) para estacionar otro vehículo, y en el posterior está la subestación eléctrica interna. En la otra esquina opera una estación de gasolina.

Subsiguientemente, el 20 de febrero, A.R.Pe. *revocó* el permiso de construcción para remodelar la primera planta. Ese dictamen *no* fue por infringir la reglamentación sobre patios y estacionamientos, sino fundamentado en las objeciones siguientes: (a) mala ubicación de un letrero iluminado; (b) falta de un sistema adecuado de disposición de basura, y (c) *incluirse en el plano un uso de cafetería prohibido por la Sec. 14.02(32) del* Reglamento de Zonificación *(Reglamento de Planificación Núm. 4,* Junta de Planificación de Puerto Rico, 1969). Esta sección dispone que en un distrito C–2 sólo pueden establecerse cafeterías si el solar donde ubica el local o estructura a utilizarse *no colinda lateralmente con un distrito residencial.*

Entretanto, Puerto Rico Seven, Inc. solicitó un *mandamus* del Tribunal Superior para obligar a A.R.Pe. conce-

derle un permiso de uso y así poder operar un colmado vecinal con el expendio de bebidas alcohólicas selladas. El 19 de abril de 1990 el tribunal accedió (Hon. Ángel G. Hermida, Juez).

Contemporáneamente, contra la negativa de A.R.Pe. *todos* apelaron —Roberto E. Fuertes, la Asociación y Puerto Rico Seven, Inc.— ante la Junta de Calidad Ambiental. Ésta consolidó y resolvió que A.R.Pe. erró al revocar el permiso de construcción para la remodelación. Concluyó que Fuertes y la Asociación *no* demostraron los perjuicios ocasionados por la construcción y operación del negocio, ni cómo les afectaba el uso y disfrute de sus propiedades. La Junta, de Calidad Ambiental estimó crucial que su dueño, ingeniero Rodríguez, escogió como frente la colindancia con la Ave. Fernández Juncos y, por ende, tanto el edificio como el solar colindan con un distrito R–5 por la parte posterior y *no lateral*. Por tales motivos autorizó el uso para un colmado vecinal con expendio de bebidas alcohólicas selladas (*convenience store*).

Fuertes, la Asociación y A.R.Pe. pidieron, sin éxito, reconsideración.[1] Solicitaron entonces revisión al Tribunal Superior, Sala de San Juan. Dicho foro (Hon. Arnaldo López Rodríguez, Juez) la declaró sin lugar. A solicitud de Fuertes y la Asociación, expedimos *certiorari*.

---

[1] Plantearon:

"A. Erró la Hon. Junta de Apelaciones al determinar que el solar donde enclava Puerto Rico Seven, Inc., Calle Estado #700, no colinda lateralmente con un distrito residencial.

"B. Erró la Hon. Junta de Apelaciones al no hacer determinaciones y/o definir el tipo de uso que se opera bajo el nombre de Puerto Rico Seven, Inc.

"C. Erró la Hon. Junta de Apelaciones al no hacer determinaciones al efecto sobre el requisito de estacionamientos, bien sea bajo el uso de colmado y oficinas profesionales excepto médicas o bajo el uso de cafetería y oficinas profesionales excepto médicas.

"D. Erró la Hon. Junta de Apelaciones al determinar que la Asociación no pudo demostrar 'los perjuicios ocasionados por la construcción u operación del uso, ni como se ha afectado el derecho del uso y disfrute de su propiedad'.

"E. Erró la Hon. Junta de Apelaciones al determinar que la Puerto Rico Seven, Inc. tiene derechos adquiridos." Apéndice, págs. 19–20.

## II

En múltiples ocasiones "hemos sostenido que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y que su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción". *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). "[D]ebe[mos] ser cautelosos al intervenir con dichas determinaciones." *Viajes Gallardo v. Clavell*, 131 D.P.R. 275 (1992). Sin embargo, esa deferencia no significa que hayamos renunciado nuestra función revisora en instancias apropiadas y meritorias, pues en "el supuesto de que la agencia administrativa hubiese cometido algún error en la aplicación de la ley, esa actuación no sería válida". *Del Rey v. J.A.C.L.*, 107 D.P.R. 348, 355 (1978).

La tesis inicial de los peticionarios Fuertes y la Asociación descansa en el predicado de que el solar en controversia *colinda lateralmente con un distrito residencial.* Como disposición legal aplicable invocan la Sec. 14.08(2) del Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1989), pág. 88, que dispone:

Cuando el solar esté situado en la misma manzana y de frente al mismo lado de una vía que solares incluídos en un distrito residencial se requerirá *un patio delantero* con fondo no menor al requerido para el distrito residencial.([2]) (Énfasis suplido.)

---

([2]) Sobre patio delantero en un distrito residencial el Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1989), pág. 65, exige:

. "11.08 Patio Delantero en Distritos R–5—Se requerirá un (1) patio delantero con un fondo no menor de tres (3) metros, o de una quinta (1/5) parte de la altura del edificio, cual fuere mayor. El fondo del patio delantero requerido no incluirá la porción o franja del solar cedida o reservada para el futuro ensanche de la vía, bajo las disposiciones sobre densidad poblacional establecidas para este distrito."

Aducen que el patio que colinda con la Calle Estado es delantero y, al no guardarse las distancias reglamentarias, Puerto Rico Seven, Inc. violó la transcrita Sec. 14.08.

Un análisis de las disposiciones reglamentarias aplicables revela que es inconsecuente precisar si dicho patio es delantero o lateral; cualquiera que fuera su clasificación, Puerto Rico Seven, Inc. tenía que guardar la distancia requerida para *patios delanteros*. Nos explicamos.

■ Si concluyéramos que es delantero, era necesario que cumpliera los requisitos de *medida* para tales patios. Además, el solar tendría un patio lateral colindando con un distrito residencial. Por otro lado, si el patio colindante con la Calle Estado fuera lateral, aplicaría la Sec. 19.08 del Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1969), pág. 80, que dispone que "[c]ualquier patio lateral o parte del mismo que linde con una vía se considerará patio delantero y *cumplirá con los requisitos de tamaño para patios delanteros en este distrito*". (Énfasis suplido.) Vemos, pues, como, independientemente de que Puerto Rico Seven, Inc. haya escogido el patio que colinda hacia la Ave. Fernández Juncos como delantero (tal como alega ante nos y concluyó la Junta), o el que colinda con la Calle Estado (como argumentan los peticionarios), *incumplió* con la Sec. 11.08 del Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1989), pág. 85, que fija las medidas de un patio delantero.[3]

■ No obstante, en vista de que los peticionarios Fuertes y la Asociación alegan que siendo el patio delantero el que colinda con la Calle Estado se violó la Sec. 14.02(32) del Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto

---

[3] La inobservancia de los requisitos para el patio delantero del colindante con la Calle Estado fue *admitido* por el arquitecto Fossas, perito del recurrido Puerto Rico Seven, Inc., al ser confrontado con esta situación en las vistas en la Administración de Reglas y Permisos (A.R.PE.). Apéndice, págs. 165–166.

Rico, 1989), pág. 85, es menester establecer cuál es el delantero y así determinar los laterales. El inciso 32 dispone:

Restaurante, cafetería, fuente de soda, barra o cafetín, [puede operarse en un distrito de zonificación C–2] siempre que el solar donde ubique el local o estructura a utilizarse para estos propósitos *no colinde lateralmente con un distrito residencial.* (Énfasis suplido.)

A su vez, el aludido reglamento define patio delantero:

Espacio abierto, desocupado u ocupado, con estructuras o usos permitidos, entre la línea de la vía y la proyección paralela a ésta de la extremidad más próxima del edificio y que se extiende hasta las líneas laterales del solar. El fondo de dicho patio es la distancia mínima horizontal entre la línea de la vía y la extremidad del edificio más inmediato a ésta. Sec 2.01(100) del Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1989), pág. 16.

Vemos, pues, que tanto el espacio entre la Ave. Fernández Juncos y el edificio construido, como el espacio entre la Calle Estado y el edificio construido, *son patios delanteros.* Como corolario, a tenor con el citado reglamento, *los patios opuestos son posteriores.* Es ineludible concluir que el solar en controversia *reglamentariamente* tiene dos (2) patios delanteros y dos (2) patios posteriores; *ninguno lateral.* A *igual conclusión* llegó la Junta de Calidad Ambiental en su Resolución de 14 de mayo de 1991 (Caso Núm. 90–044-AE). En consecuencia, Puerto Rico Seven, Inc. *no* violó la Sec. 14.02(32), pero sí la Sec. 19.09 del citado reglamento.

III

Aclarado este extremo, concentremos en el número reglamentario de estacionamientos *según el uso originalmente propuesto* de dos (2) plantas para oficinas profesionales, excepto médicas. Se recordará que el ingeniero Rodríguez sometió y obtuvo de A.R.Pe. una *variación* para

el patio posterior y una reducción de los estacionamientos de quince (15) a doce (12) para *todo el edificio.*

Los peticionarios Fuertes y la Asociación argumentan que según el testimonio de su perito, Ing. Herman L. Guillermety, a tenor con la Sec. 70.03 del Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1989), pág. 16, el número de estacionamientos necesarios varía dependiendo de los *usos.* En su estudio, en lo pertinente, Guillermety concluyó que: (a) utilizando el segundo piso para oficinas profesionales, excepto médicas, y el primer piso para *colmado,* más una tercera parte para almacén, requería diecinueve (19) estacionamientos; (b) utilizando el segundo piso para oficinas profesionales, excepto médicas, y el primer piso para cafetería con colmado y almacén requeriría veinticuatro (24) estacionamientos.

Sobre este mismo aspecto, por mandato del tribunal de instancia, la Junta de Calidad Ambiental realizó un *cómputo.* Reveló que si la primera planta del edificio se utilizara para almacén en una tercera parte y para colmado, y la segunda planta para oficinas profesionales, excepto médicas, el número requerido sería dieciocho (18). Bajo el supuesto de que la primera planta se dedicara a almacén en una tercera parte, a cafetería, a oficina, a colmado (en proporción a los metros cuadrados correspondientes a cada actividad), y la segunda planta a oficinas profesionales, excepto médicas, se requerían veintitrés (23) espacios de estacionamiento.

Es evidente que estos cálculos de la Junta son muy diferentes al número que A.R.Pe. fijó *antes* de aprobar la variación solicitada.(⁴) Se debe a que en el referido *cómputo* la Junta tomó en consideración un uso de colmado vecinal *distinto* al que A.R.Pe. consideró al conceder la variación.

_____

(⁴) Según el Informe sobre Acuerdo Adoptado por el Director de la Oficina Regional de San Juan de 25 de agosto de 1988, los estacionamientos requeridos por el Reglamento de Lotificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1989) eran quince (15).

Para justificar su dictamen, la Junta de Calidad Ambiental nos dice:

> En materia de estacionamientos la práctica administrativa se ha caracterizado por ser flexible, debido principalmente a la escasez de terrenos. En el sector donde ubica el caso de autos muchos de los locales carecen de estacionamiento. No permite cumplir a cabalidad con los requisitos reglamentarios la cabida limitada de muchos solares, por lo que las variaciones suelen ser comunes. Alegato en réplica a solicitud de *certiorari*, pág. 8.

■ *No nos convence.* La Sec. 82.06 del Reglamento de Lotificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1989) visualiza, como factores a considerarse al conceder variaciones,[5] los siguientes:

1. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

2. La variación solicitada no afectará adversamente entre otros, los siguientes factores:
 a. La disponibilidad de infraestructura
 b. El contexto en el que ubica
 c. El ambiente de la calle
 d. La seguridad y tranquilidad de los vecinos

3. Se logra un desarrollo urbano más compacto.

4. La densidad o intensidad solicitada no lleva convertir el distrito en otro.

5. La variación solicitada es cónsona con los propósitos de la disposición reglamentaria que se solicita sea modificada, así como con la política pública.

El Informe sobre Acuerdo Adoptado por el Director de la Oficina Regional de San Juan de 25 de agosto de 1988 y la

---

[5] El Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, 1989), pág. 21, define *variación* como:

"Autorización para utilizar una propiedad para un uso prohibido por las restricciones impuestas a una zona o distrito y que sólo se concede para evitar perjuicios a una propiedad que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad. Variación es sinónimo de concesión." Sec. 2.01(148).

Resolución de la Junta de Calidad Ambiental no revelan que consideraran ninguno de los factores enumerados en el Reglamento. Además, surge que la variación concedida fue para el *uso total de oficinas profesionales, en sus dos (2) plantas, excepto médicas.*

## IV

Nuestra más reciente casuística refleja una tendencia judicial apuntalada en dos (2) enfoques.

*Primero,* solamente avalar variaciones concedidas por A.R.Pe. en situaciones realmente extraordinarias y meritorias. *Fuertes, Guillermety v. A.R.Pe,* 130 D.P.R. 971 (1992); *A.R.P.E. v. J.A.C.L.,* 124 D.P.R. 858 (1989); *Asoc. Res. Baldrich, Inc. v. J.P. de P.R.,* 118 D.P.R. 759 (1987). Nos fundamos en la necesidad de que "[l]a consecución de una mejor calidad de vida colectiva y el desenvolvimiento normal del orden social exigen, en lo posible, que el desarrollo urbano sea ordenado y configurado según las medidas, reglamentos y leyes promulgadas". *Fuertes, Guillermety v. A.R.Pe.,* supra, pág. 979. A la postre, el uso indiscriminado de variaciones "podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito, planificado originalmente con una infraestructura para ciertos usos". *A.R.P.E. v. J.A.C.L.,* supra, pág. 862.

La situación de autos no admite otra solución. El récord demuestra unas diferencias sustanciales en los cálculos de A.R.Pe. sobre el número reglamentario de estacionamientos. En la solicitud de variación original, A.R.Pe. señaló quince (15) estacionamientos y, posteriormente dispuso que, *dependiendo de los usos* que se dieran al local, podrían ser dieciocho (18) o veintitrés (23). Concediéndole a Puerto Rico Seven, Inc. el beneficio de exigirle sólo dieciocho (18) estacionamientos, subsistiría la realidad de que la variación concedida de doce (12) representa una disminución en un

treinta por ciento (30%) de ese número —de su faz— *excesiva.*

Esa variación no se justifica. Origina problemas provenientes de personas que consumen bebidas y alimentos en los alrededores del negocio y frente a propiedades residenciales ocasionando bullicios; de clientes y suplidores que se estacionan en la Calle Estado y sobre las aceras obstaculizando el libre tránsito vehicular y peatonal; del impacto negativo que ocurre cuando hay conglomeración de automóviles y sus usuarios hacen uso indiscriminado de sus bocinas. No podemos olvidar el horario de operación del negocio (24 horas), lo cual genera un uso intenso e ininterrumpido que atrae personas *ajenas* al vecindario, alterando indudablemente la tranquilidad de esa zona residencial.([6])

 *Segundo,* procede aplicar a Puerto Rico Seven, Inc. la norma de autoinflicción del daño como "imp[edimento a una] solicitud y concesión de una variación en casos en que el promovente —conociendo las limitaciones impuestas por los requisitos de zonificación— se coloca voluntariamente en una posición que le ocasiona perjuicio irrazonable". *Asoc. Res. Baldrich, Inc. v. J.P. de P.R.,* supra, pág. 772 y obras allí citadas. Véanse: *Asoc., C.D. Octubre v. J.A.C.L.,* 116 D.P.R. 326, 334 (1985); *Fuertes, Guillermety v. A.R.Pᴇ.,* supra. Veamos.

Se recordará que la variación concedida por A.R.Pᴇ. disminuyó de quince (15) a doce (12) el número de estacionamientos *del edificio.* Posteriormente, A.R.Pᴇ. calculó que *dependiendo del uso de la primera planta* se requerirían 8.69 o 14.07 estacionamientos; para la segunda planta, según el uso de oficinas profesionales, excepto médicas, 8.80

---

([6]) Estos perjuicios surgen de los testimonios en la vista en A.R.Pᴇ. del Lcdo. Roberto Fuertes, el Sr. Francisco López, el Sr. Adrián Marrero, el Padre Armando Álvarez, el Sr. Andrés Romero y el policía Ramón González Figueroa. Determinaciones de Hecho, Oficial Examinador Miguel Mihaljevich, de 15 de febrero de 1990.

Ni A.R.Pᴇ. ni la Junta de Calidad Ambiental hace mención a estos problemas en sus respectivas resoluciones, aún cuando los mismos son cruciales.

estacionamientos. Puerto Rico Seven, Inc. erróneamente alega que los doce (12) estacionamientos que actualmente tiene el edificio le corresponden. No tiene razón. Aparte de que ese número viola el Reglamento de Lotificación, la variación concedida por A.R.Pe. fue para el edificio y *todos* sus usos, y se tomó en cuenta que el edificio se utilizaría en su totalidad para oficinas profesionales, excepto médicas. Ciertamente, antes de remodelar, Puerto Rico Seven, Inc. debió conocer que no habían suficientes espacios de estacionamiento para el uso proyectado y que la variación concedida no consideraba el mismo. Además, en cuanto a la Calle Estado, sabía que no cumplía con la distancia numérica para todo patio delantero. Voluntariamente asumió el riesgo de remodelar sin cumplir con tales reglamentos; ahora no puede reclamar derechos adquiridos.

Hay una ausencia total de circunstancias extraordinarias y meritorias que justifiquen la variación. Esta no es válida por infringir directamente y afectar sustancialmente los importantes factores y valores vecinales y ambientales ínsitos en la reglamentación. Además, Puerto Rico Seven, Inc. descansó en una variación concedida para el edificio a base de un uso distinto al proyectado como medio para evadir el número reglamentario de estacionamientos. No podemos avalar tal conducta.

*Una última aclaración.* Coincidimos con la Junta de Calidad Ambiental en que en el sector de Miramar hay escasez de terrenos; pero ciertamente es *mayor* la escasez de estacionamientos. La situación no es distinta a otros sectores del área metropolitana, particularmente en San Juan, Santurce y Río Piedras, que sirvieron de fundamento para la Resolución RP-4-3-82 adoptando enmiendas al Reglamento de Zonificación (Núm. 4) sobre áreas de estacionamiento. Orden Ejecutiva Núm. 4055 de 22 de noviembre de 1982.

*Se dictará sentencia revocatoria.*

El Juez Asociado Señor Rebollo López, la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Fuster Berlingeri no intervinieron.