# 2002 DTA 83

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL IV DE AGUADILLA-MAYAGÜEZ
### PANEL I

F. W. MAYAGÜEZ, S.C., LIMITED PARTNERSHIP, S.E.,
WESTERN PLAZA SHOPPING CENTER Y K-MART CORPORATION
Recurrentes

v.

JUNTA DE PLANIFICACION DE PUERTO RICO,
G.P. REAL PROPERTY CORP
Recurridas

Núms. KLRA-01-00517 / KLRA-01-00562

San Juan, Puerto Rico, a 25 de marzo de 2002

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

López Vilanova, Juez Ponente

■■■■■■■

## TEXTO COMPLETO DE LA RESOLUCION

F.W. Mayagüez, S.C., Limited Partnership, S.E., Western Plaza Shopping Center, K-Mart Corporation y el Centro Unido de Detallistas, recurren de una Resolución emitida por la Junta de Planificación el 14 de febrero de 2001, notificada el 31 de mayo de 2001. Mediante dicha consulta, la Junta autorizó la consulta Núm. 99-29-0657-JPU, para la ubicación de un proyecto comercial en un Distrito Residencial Cero (0), del Municipio de Mayaguez.

Veamos los hechos que motivaron la presentación del recurso.

### I

El 21 de junio de 1999, el Ing. José J. Durand Rodríguez, en representación de GP Real Property Corp., sometió ante la Junta de Planificación una consulta de ubicación para establecer un proyecto comercial en una finca de 22 cuerdas, ubicada en la Carretera Estatal Núm. 2 Km. 179.0, Bo. Maní, Mayagüez, Puerto Rico. Los terrenos están delimitados por el Norte con la Carretera Estatal PR-64; por el Sur con Western Plaza Shopping Center; por el Este con la Carretera Estatal PR-2; y por el Oeste con Orlando González Trucking.

Se propuso la ubicación de un proyecto comercial en un Distrito Residencial Cero (0), con un área de construcción ascendente a 141,000 pies cuadrados. De éstos, 99,500 pies cuadrados se utilizarán para ventas al detal y los restantes 41,050 pies cuadrados, se destinan para área de servicio, entre los cuales se encuentra un banco, comida rápida, megatienda para efectos de oficina y una farmacia.

La Junta de Planificación consultó a varias agencias sobre la viabilidad del proyecto propuesto.

El 12 de julio de 1999, la Autoridad de Acueductos y Alcantarillados y la Autoridad de Energía Eléctrica emitieron sus comentarios sobre la consulta. La Autoridad de Carreteras y Transportación emitió sus comentarios el 13 de julio de 1999.

Por su parte, el Departamento de Recursos Naturales y Ambientales (DRN), emitió sus comentarios el 13 de julio de 1999. Dicha agencia recomendó la preparación de un documento ambiental conforme a la Ley Sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970.

El Instituto de Cultura Puertorriqueña recomendó la preparación de una evaluación arqueológica.

El 23 de septiembre de 1999, la Junta de Planificación aceptó como parte interventora al Centro Unido de Detallistas.

El 3 de julio de 2000, la Junta de Calidad Ambiental (JCA) cursó comunicación en la que indicó haber evaluado el documento ambiental sometido y concluyó que con esto se cumplió con la fase de evaluar el posible impacto ambiental de la acción propuesta. No obstante, cuando se sometió el documento ambiental al Departamento de Recursos Naturales y Ambientales (DRNA), dicha agencia emitió nuevos comentarios el 26 de septiembre de 2000, indicando que el proyecto impactaría áreas ecológicamente sensitivas.

El 3 de agosto de 2000, se celebró una vista pública en el Salón de Asambleas de la Casa Alcaldía del Municipio de Mayagüez.

El 31 de mayo de 2001, la Junta de Planificación aprobó la consulta Número 99-29-0657 como un desarrollo extenso. Los aquí recurrentes solicitaron reconsideración, la cual fue denegada por la Junta.

Inconformes con el dictamen, el 6 de agosto de 2001, F.W. Mayagüez, S.C. Limited Partnership, S.E. Western Plaza Shopping Center y K-Mart Corporation, presentaron Recurso de Revisión ante este Tribunal. Por su parte, el Centro Unido de Detallistas hizo lo mismo el 31 de agosto de 2001. A solicitud de los recurrentes, consolidamos ambos recursos.

Como señalamientos de error sostienen, en síntesis, que incidió la Junta al autorizar un proyecto comercial al Suroeste del Caño La Boquilla, el cual forma parte de la Lista de Protección para Areas de Alto Valor Natural en Puerto Rico; que el proyecto viola Sobre Ley de Política Pública Ambiental y que la Junta no consideró los comentarios emitidos por el Departamento de Recursos Naturales. Señalan, además, que incidió la Junta al aprobar un proyecto comercial cuyo informe de viabilidad económica no evaluó el pietaje de los centros comerciales que están disponibles en el sector y que no cumple con el Plan de Ordenamiento Territorial del Municipio de Mayagüez, ni con el Plan de Usos de Terrenos de Puerto Rico. Por último, sostienen que incidió la Junta al autorizar el proyecto propuesto en un Distrito Residencial Cero (0), sin que se solicitara una variación en uso o un cambio de zonificación. Tienen razón.

## II

La Junta de Planificación se creó con el propósito general de guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico, fomentando el bienestar general de los ciudadanos y la eficiencia en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y en las mejoras públicas. *E.L.A. v. Domínguez*, 104 D.P.R. 468, 470 (1975). El inciso 14 del artículo 11 de la Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 76 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62j (14), faculta expresamente a la Junta a *"hacer determinaciones sobre usos de terrenos dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico"*.

Entre las determinaciones que la Junta está facultada a tomar están las relacionadas a las solicitudes de consultas de ubicación. El Reglamento de Zonificación define una consulta de ubicación como:

*"[E]l procedimiento ante la Junta de Planificación para que evalúe, pase juicio y tome la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren. En áreas no zonificadas incluye propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social pudiesen afectar significativamente el desarrollo de un sector. Esta consulta se identifica como pública o privada dependiendo de quién la origine e incluye los proyectos de desarrollos extensos a considerarse bajo las disposiciones de las Secciones 95.00, 96.00 y 97.00 de este Reglamento."* Sección 2.01 del Reglamento de Zonificación, *supra*, Véase también, inciso 6 de la sección 2.00 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244.

Al analizar una consulta de ubicación, la Junta de Planificación considerará, entre otros, el Plan de Usos de Terrenos de Puerto Rico y la importancia ambiental o turística del predio a desarrollarse. La Junta también podrá consultar a otros organismos gubernamentales que tengan relación con el proyecto bajo su consideración. Véase Secciones 7.00 y 7.01 del Reglamento para Procedimientos Adjudicativos de la Junta. La Sección 7.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación dispone en lo pertinente:

*"7.01- EVALUACION, TRAMITACION Y DISPOSICION DE LA CONSULTA- La Junta de Planificación, estudiará, tramitará y resolverá las consultas de ubicación, tomando en consideración, entre otros, los siguientes documentos y elementos de juicio; Ley Orgánica de la Junta de Planificación (Ley Núm. 75 de 24 de junio de 1975, según enmendada), Ley de Municipios Autónomos, (Ley Núm. 81 de 30 de agosto de 1991, según enmendada); Plan de Desarrollo Integral, Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico; Planes de Usos de Terrenos (incluye Mapas de Expansión Urbana); Mapas de Zonificación;*

*Mapas de Zonas Susceptibles a Inundaciones, Planes de Ordenación Territorial, adoptados por la Junta de Planificación y aprobados por el Gobernador; Planes Regionales, adoptados por la Junta y aprobados por el Gobernador; Reglamentos de Planificación y otra reglamentación aplicable; Programas de Inversiones de Cuatro Años, localización específica del proyecto, usos existentes en el sector, situación de la infraestructura física y social en el lugar (calles, acueductos y alcantarillado, energía eléctrica, transportación, recogido de basura, servicio policíaco y otros); rasgos topográficos, condición de inundabilidad, condición del subsuelo, densidad poblacional, grado de contaminación del ambiente, distancia entre los terrenos y las áreas construidas, importancia agrícola, ambiental o turística de los terrenos, y otras condiciones sociales, económicas y físicas análogas."*

El proceso de consulta de ubicación es de naturaleza adjudicativa. *Luán Investment Corp. v. Román,* 125 D. P.R. 533, 547 (1990). La revisión judicial de una resolución administrativa de naturaleza adjudicativa debe hacerse mediante un examen de todo el expediente administrativo, de modo que el tribunal pueda determinar si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial. Secs. 3.14 y 3.15 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. secs. 2175 y 2164.

La Junta de Planificación tomará su determinación sobre las consultas de ubicación considerando la totalidad del expediente y emitirá resolución incluyendo determinaciones de hechos y conclusiones de derecho que fundamenten el acuerdo tomado. Sección 9.00 del Reglamento para los Procedimientos Adjudicativos de la Junta de Planificación.

### III

Los recurrentes sostienen que el proyecto propuesto no cumple con el Plan de Usos de Terrenos de Puerto Rico, ni con el Plan de Ordenamiento Territorial del Municipio de Mayagüez, y que para la aprobación de la consulta era necesario solicitar un cambio de zonificación.

Entre los Objetivos y Políticas Públicas del Plan de Usos de Terrenos de 30 de octubre de 1995 está lo siguiente:

*"2.02- Intensificar los usos comerciales y de servicios, tanto públicos como privados, teniendo como criterio:*

*-Requerir que los proyectos comerciales y de servicios se ubiquen en terrenos identificados y destinados para usos comerciales y de servicios.*

.....

.....

.....

*Mantener un buen balance entre los centros comerciales regionales, subregionales, comunales y vecinales con los pequeños y medianos comerciantes de los municipios."* (Énfasis suplido.)

La zonificación del predio objeto de consulta es Residencial Cero (0). El uso comercial no está permitido en un Distrito Residencial Cero (0), por lo que el proyecto propuesto no cumple con los objetivos y políticas del Plan de Usos de Terrenos de Puerto Rico. El Reglamento de Planificación Núm. 4 define Distrito Residencial Cero (0) como sigue:

*"10.01- Propósitos del Distrito R-0- Este distrito especial de baja densidad poblacional, con solar mínimo de ocho mil (8,000) metros cuadrados, se establece para facilitar el control de la expansión o crecimiento urbano; proteger la utilidad de las vías arteriales; preservar terrenos de alta productividad agrícola ; **proteger áreas que requieran la preservación de su flora o fauna por su importancia económica, ecológica o científica; y proteger el disfrute y preservación de recursos de interés público, tales como: rasgos topográficos, bosques arboledas, paisajes, formaciones geológicas, manantiales, quebradas, ríos, lagos, lagunas, fuentes naturales de agua, mangles, yacimientos minerales o playas.* "* (Énfasis suplido.)

La Sección 10.02 del Reglamento de Planificación Núm. 4 establece que los propósitos y usos del Distrito Residencial Cero (0) serán:

*"1. Usos agrícolas– ......*

*2. Casas de una o dos familias*

*3. Otros usos de acuerdo con lo establecido en la Sección 99.00 de este Reglamento."*

La Sección 99.00 y 99.02 del Reglamento Núm. 4 de Planificación disponen que la Junta podrá considerar vía excepción aquellos usos compatibles con el carácter esencial del distrito, que en forma discrecional podrían autorizarse sin detrimento al propósito del distrito. Conforme a la Sección 10.02 del Reglamento de Zonificación, un uso comercial no es compatible con el carácter esencial del Distrito Residencial Cero (0).

La consulta para la ubicación del proyecto propuesto tampoco puede considerarse como excepción, porque el uso comercial propuesto no es compatible con el carácter esencial del Distrito Residencial Cero (0).

La Sección 99.06 del Reglamento de Zonificación establece los usos a considerarse por la Junta de Planificación vía excepción. Un establecimiento comercial en un Distrito Residencial Cero (0) no es un uso a considerar vía excepción.

Toda vez que la Sección 10.2 del Reglamento de Planificación Núm. 4 no autoriza el uso comercial en un Distrito Residencial Cero (0), la Junta de Planificación aprobó la consulta de ubicación que nos ocupa como un desarrollo comercial extenso, al amparo de la Sección 97.01 del Reglamento de Zonificación.

Un desarrollo comercial extenso comprende *"el desarrollo de facilidades comerciales, industriales, institucionales o recreativos que excedan veinte mil (20,000) pies cuadrados de construcción o en terrenos que excedan cuatro mil (4,000) metros cuadrados."* Sección 1.06 del Reglamento de Zonificación. La Junta de Planificación o la Administración de Reglamentos y Permisos (A.R.P.E.), podrán considerar desarrollos extensos conforme a lo dispuesto en las Secciones 96.00 y 97.00. Véase, Sección 95.01 del Reglamento de Zonificación. No obstante, el propósito de estas disposiciones es identificar para conocimiento general, aquellos proyectos de desarrollos extensos que puedan ser considerados al amparo de las disposiciones del Reglamento de Zonificación. Sección 95.02 del Reglamento de Zonificación.

La evaluación que se tome sobre un proyecto de desarrollo extenso propuesto descansará en los siguientes factores:

*"1. Conformidad del uso propuesto y su intensidad con el Plan de Usos de Terrenos hasta donde éste haya sido adoptado o estudiado.*

*2. Disponibilidad, programación y mejoras propuestas por el proyecto a la infraestructura del sector en que ubica.*

*3. La forma en que el proyecto propicia el desarrollo integral del sector y mantiene o mejora condiciones existentes.*

*4. La viabilidad, adecuacidad y conveniencia del uso propuesto. Sección 95.03 del Reglamento de Zonificación."*

La Sección 97.01, del Reglamento de Zonificación, faculta a la Junta a aprobar proyectos de desarrollos comerciales extensos, independientemente del distrito de zonificación en que ubica el predio objeto de consulta. No obstante, la aprobación de una consulta como desarrollo comercial extenso tiene unas limitaciones y no debe servir de subterfugio para obviar el cumplimiento de otras disposiciones reglamentarias.

La Sección 97.01 del Reglamento de Zonificación, dispone en lo pertinente:

*"Proyectos de Desarrollos Comerciales Extensos o Mixtos que Incluyan Comercios y Viviendas, de Acuerdo con lo Siguiente:*

*1. La cabida del predio excederá el máximo permitido como cambio de zonificación y cada estructura ubicará en un solar con tamaño suficiente para proveer el estacionamiento requerido.*

*2. El proyecto estará conforme con las recomendaciones del Plan de Usos de Terrenos hasta donde éste haya sido adoptado o estudiado.*

*3. Si la infraestructura necesaria para atender las necesidades del proyecto propuesto y para mitigar sus efectos directos e indirectos está disponible o puede proveerse.*

*4. .....*

*5. Cuando se trate de usos comerciales para ventas al detal, el proponente proveerá información para determinar el efecto de la aprobación en el ofrecimiento comercial del área de mercado."* (Enfasis suplido.)

Estos requisitos deben cumplirse por la parte proponente cuando solicita la aprobación de una consulta como desarrollo extenso.

En el caso ante nos, la parte proponente no discutió la viabilidad, adecuacidad ni la conveniencia del uso solicitado, la disponibilidad de espacios comerciales existentes ni la saturación del mercado. El proyecto tampoco cumple con el Plan de Usos de Terrenos de Puerto Rico. El proponente no demostró en qué forma el proyecto propuesto propiciaría el desarrollo integral del sector.

No obstante, la Junta aprobó la consulta como un desarrollo extenso, aun cuando surge claramente de las conclusiones de derecho de la agencia, que la parte proponente no cumplió con las disposiciones que regulan la aprobación de proyectos comerciales como desarrollos extensos.

Además, conforme a la Sección 4.002 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, el proponente debía enmarcar su proyecto dentro de la actividad comercial existente y aprobada en el área de mercado incluyendo la saturación de mercado, la oferta de servicios en el área del renglón ofrecido y los comercios existentes de los cascos tradicionales adyacentes y las avenidas principales comerciales.

La Junta de Planificación concluyó lo siguiente:

*"[L]a parte proponente no informó cabalmente a la Junta sobre la disponibilidad de espacios comerciales*

*existentes, sobre la saturación del mercado en el área de Mayagüez, la oferta y demanda de servicios en el área dentro del renglón ofrecido, los comercios existentes de los cascos tradicionales adyacentes y las avenidas principales comerciales."* ■

Las disposiciones del Reglamento de Planificación Núm. 4 deben ser consideradas conjuntamente y no de forma aislada. *T-JAC Inc., v. Caguas Centrum Limited,* **99 J.T.S. 60.** A estos efectos, en *T-JAC, Inc.,* el Tribunal expresó lo siguiente:

*"La Sección 97 se refiere a desarrollos extensos evaluados por la Junta de Planificación y son aquéllos cuyos propuestos usos de terrenos no están permitidos por la reglamentación aplicable. Se dispone en la Sección 97.01 que se podrá someter a la Junta cualquiera de los tipos de proyectos que se indican en esta sección, solos o combinados, independientemente del distrito en que se propongan. Los peticionarios han interpretado que para los proyectos de desarrollos extensos regulados por la sección 97.01 no hay que cumplir con los requisitos de la sección 98.00 y demás disposiciones reglamentarias, en vista del citado lenguaje de la regla al efecto de que se le someterán los proyectos independientemente del distrito en que se propongan. Aunque la regla faculta a la Junta de Planificación para considerar estos proyectos independientemente del distrito, ello no exime a la Junta de observar los procedimientos establecidos y promulgados por esta misma agencia para la consideración y aprobación de tales proyectos. Dicha disposición ha de ser considerada en conjunto con el total del cuerpo reglamentario."* (Énfasis suplido.)

La Sección 4.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación dispone en lo pertinente:

*"Cuando una consulta no constituya un desarrollo extenso o cuando conlleve una variación, junto a la consulta, se someterá una solicitud de variación utilizando el formulario correspondiente. En dicha solicitud se señalarán los motivos, fundamentos y razones en que apoyan el formulario correspondiente."*

La determinación de si procede considerar un proyecto comercial como un desarrollo extenso le corresponde a la Junta y no a la parte. Por ello, cuando el desarrollo propuesto no está permitido en el distrito de zonificación de que se trate, el proponente deberá cumplir con los requisitos reglamentarios necesarios para que la Junta evalúe la consulta conjuntamente con la concesión de una variación. La parte proponente debió presentar una solicitud de variación para que fuera considerada conjuntamente con la consulta.

Una variación es una concesión para utilizar la propiedad conforme al uso propuesto cuando el mismo está prohibido en el distrito de zonificación. *Fuertes v. A.R.P.E.,* 134 D.P.R. 947 (1993). La Sección 98.00 del Reglamento de Planificación Núm. 4, establece las instancias en que deberá solicitarse una variación. Aunque la concesión indiscriminada de variaciones podría destruir todo nuestro esquema de zonificación. *Id.* a la pág. 958.

No debemos perder de perspectiva que la Junta de Planificación tiene facultad para *"dispensar el cumplimiento de uno o varios requisitos reglamentarios, con el propósito de lograr la utilización óptima de los terrenos y dirigido hacia el objetivo de poner en práctica el desarrollo urbano compacto"*; y en los casos en que proceda la concesión de una excepción o variación, deberá demostrársele a la agencia *"que dicha dispensa aliviará un perjuicio claramente demostrable, pudiendo imponer las condiciones que el caso amerite para beneficio o protección del interés público."* Artículo 11 de la Ley Orgánica de la Junta de Planificación, 23 L.P. R.A. sec. 62j (7).

**IV**

La Sección 7.01 del Reglamento de Procedimientos Adjudicativos faculta a la Junta de Planificación a consultar, cuando sea necesario, a otras agencias con peritaje en las áreas de planificación. Reglamento de Planificación Núm. 5244. La función de dichas agencias consiste en ilustrar a la Junta y ayudarla a llevar a cabo

su función de evaluar las consultas de ubicación y considerar la conveniencia y los perjuicios de los proyectos propuestos. *Rivera Ramos v. Morales Blás,* **99 J.T.S. 170**, 348-349.

En el caso ante nos, la Junta de Planificación, en el ejercicio de su discreción, consultó varias agencias con peritaje en el área ambiental, tales como la Junta de Calidad Ambiental y el Departamento de Recursos Naturales.

El Departamento de Recursos Naturales y Ambientales (DRNA), recomendó la preparación de un documento ambiental. Al examinar el documento ambiental sometido por el proponente a la JCA, el DRNA señaló lo siguiente:

*"Hemos evaluado el documento ambiental sometido para el proyecto comercial "Elite Valley Town Center", localizado en la Carr. PR-2 Int. Con Carr. PR-64, Bo. Sabanetas de Mayagüez.*

*El proyecto propuesto está ubicado al suroeste del Caño La Boquilla. Dicho caño forma parte de la Lista de Prioridades de Protección para Areas de Alto Valor Natural en Puerto Rico del Departamento de Recursos Naturales y Ambientales en la categoría de áreas con designación especial. Al presente, el DRNA coordina y realiza un proyecto para la adquisición de 258 cuerdas (101 hectáreas) de terreno, mayormente en humedales y zona marítimo-terrestre, para construir la Reserva Natural Caño La Boquilla. El fin que se persigue con esta acción es proteger un área natural de alto valor ecológico, que forma parte del patrimonio natural de Puerto Rico, para beneficio de presentes y futuras generaciones.*

*Nos preocupa el impacto que pueda tener este desarrollo comercial sobre el Caño La Boquilla, que está situado al noroeste de la colindancia norte del lugar propuesto para desarrollo. El movimiento de terreno que se requeriría para la nivelación de las áreas de construcción del propuesto centro comercial, hasta elevaciones entre 3.5 y 5 metros sobre el nivel promedio de la marea, sería de 250,000 metros cúbicos. El arrastre de material de suelo expuesto, incidental a las labores de relleno para nivelar el predio y hacerlo apto para el desarrollo, podría causar la sedimentación del área natural del Caño La Boquilla, lo que podría afectar significativamente el valor ecológico de dicho sistema.*

*Consideramos pertinente que se genere un suplemento a la EA que conteste o discuta en detalle los señalamientos expresados en el presente escrito.*

*Las medidas de protección deben ser discutidas detalladamente y deben considerar el valor natural del sistema ecológico del Caño La Boquilla. El análisis que se presenta es muy simple, y no considera el impacto potencial que la sedimentación de la Quebrada Boquilla y los restantes cuerpos de agua que cruzan el predio tendría sobre el área natural aguas abajo, sobre el cual este Departamento tiene un interés expreso de conservación."*

El Departamento de Recursos Naturales y Ambientales presentó, además, las siguientes preocupaciones en relación al estudio hidrológico sometido por la recurrida:

*"1. El estudio estima descargas máximas para el área del proyecto, para frecuencias de ocurrencia de 25 y 50 años. Todo el análisis hidrológico debe ser efectuado para una descarga de 100 años. Se debe incluir:*

*a. Los datos que sirvieron para la estimación de la descarga de la alcantarilla de 60" de diámetro; área de captación, tiempo de concentración, tipos de suelos.*

*b. La estimación de la descarga máxima de 100 años para la Quebrada Boquilla.*

*c. Los datos de entrada en el output del modelo HMS. Finalmente, se deben combinar los hidrogramas del área del proyecto, de la tubería de 60" y de la Quebrada Boquilla, para estimar la descarga hacia el Canal Pep-Boys.*

*2. La propuesta de la estación de bombeo debe ser sustentada con un esquema viable de operación y mantenimiento, que incluya costos y la persona o entidad responsable....".* ■

El Departamento de Recursos Naturales y Ambientales concluyó en su comunicación, que una vez se enmendara y corrigiera el estudio ambiental, dicha agencia continuaría con la evaluación.

No surge del expediente que se haya cumplido con los señalamientos del DRNA. Tampoco surge de la Resolución recurrida que se le hubiese sometido al Departamento de Recursos Naturales y Ambientales el suplemento a la Evaluación Ambiental, ni que dicha agencia se hubiese expresado sobre el mismo.

Concluimos por ello, que el DRNA no endosó el proyecto objeto de consulta y que la Junta no contó con los comentarios finales ni con las recomendaciones del Departamento antes de emitir su Resolución.

El Departamento de Recursos Naturales y la Junta de Calidad Ambiental son las agencias con peritaje para evaluar cualquier posible impacto ambiental de la acción propuesta al amparo del Artículo 4-C de la Ley Sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970. 12 L.P.R.A. sec. 1121(c).

La Ley Sobre Política Pública Ambiental, *supra*, le impuso a los departamentos, agencias, corporaciones públicas, municipios e instrumentalidades del Estado Libre Asociado de Puerto Rico y sus sub-divisiones, el deber de preparar una declaración de impacto ambiental antes de llevar a cabo cualquier acción o decisión gubernamental que afecte significativamente el ambiente. 12 L.P.R.A. sec.1124 (c). El estatuto obedece el mandato constitucional que establece que *"[s]erá política pública del Estado Libre Asociado de Puerto Rico la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad."* Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art. IV, Sec.19.

Si bien la Junta de Planificación tiene discreción para consultar, cuando estime necesario, a las agencias con peritaje en las áreas relacionadas con la planificación urbana, Sección 7.01 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, una vez ejerce esa discreción no puede arbitrariamente descartar las opiniones de dichos organismos especializados, sustituyéndolas por su propio criterio.

La Junta de Planificación hizo caso omiso a los comentarios del Departamento de Recursos Naturales y Ambientales (DRNA) y no exigió un suplemento a la DIA que contestara las interrogantes y preocupaciones planteadas por el Departamento.

El récord o expediente administrativo constituye la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior. Sec. 3.18 de la Ley de Procedimiento Administrativo Uniforme, *supra*, 3 L.P.R.A. sec. 2168; *Municipio de San Juan v. Junta de Calidad Ambiental,* **99 J.T.S. 152**, 125. Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de manera arbitraria, ilegal o tan irrazonable que sus actuaciones constituyeron un claro abuso de discreción. *Fuertes v. A. R.P.E.,* 130 D.P.R. 971 (1993). La intervención judicial se justifica cuando las determinaciones de la agencia no están sostenidas por prueba sustancial, ante la totalidad del récord administrativo.

En el caso ante nos, no existe base en el récord que sostenga las determinaciones de hecho de la Junta, por lo que concluimos que la agencia abusó de su discreción al aprobar la consulta objeto de este recurso.

## V

Por los fundamentos expuestos, se revoca la resolución recurrida.

Notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 83**

**1.** Véase Conclusiones de Derecho de la Resolución Recurrida.

**2.** Véase Resolución de la Junta de Planificación, Apéndice 1, a las págs. 7, 8 y 9.