TEXTO COMPLETO DE LA RESOLUCION
Mediante el recurso de epígrafe recurren ante nos los Vecinos de la Urbanización Salimar procurando la revocación de una resolución emitida por la Administración de Reglamentos y Permisos (en adelante “A.R.P. E.”), mediante la cual se aprobó un permiso de uso a favor del Programa Head Start del Gobierno Municipal de Guayama, para establecer un Centro de Cuido de Niños en la mencionada urbanización.
Examinado la totalidad del expediente, denegamos la expedición del auto de revisión solicitado.
I
El Programa Head Start del Gobierno Municipal de Guayama, por conducto del señor Juan N. Medina Argueta, presentó ante A.R.P.E. una solicitud de permiso de uso para operar un Centro Head Start (centro de cuidado de niños), en la Calle 5, F-3, Urb. Salimar del Municipio de Salinas.
Lo anterior se haría mediante un esfuerzo conjunto entre los Municipios de Salinas y Guayama bajo el *829 Programa de Enseñanza Preescolar, auspiciado por este último.
La propiedad donde ubicaría el centro le pertenece a los señores, Tomás Rosa Santos y Carmen Virgenmina Rodríguez. La misma es una estructura construida en bloques y hormigón armado con dimensiones de 47’-0” X 47’-3” de una planta.
El Municipio de Salinas le solicitó a A.R.P.E. que le certificara si obras tales como: pintar la estructura, reparar y cambiar las manecillas de las ventanas, corregir enlucido, ampliar puerta de acceso, tapiar ventanas con madera para instalar aire acondicionado, habilitar puertas de escape y preparar aceras en los alrededores, requerían un permiso de dicha agencia. Mediante comunicado a esos efectos, A.R.P.E. le informó que por ser obras de carácter menor, se podrían realizar las mismas sin obtener un permiso de la agencia.
El propuesto centro de cuido de niños operaría con una matrícula aproximada de veinte (20) niños de cuatro (4) años de edad en un horario de 7:30am a 6:30pm, de lunes a viernes. Entre los servicios básicos que ofrecería el centro se incluyeron: servicios de salud y desarrollo infantil; educación y desarrollo en la primera infancia; salud física y mental, seguridad y nutrición del niño.
Se notificó a todos los vecinos en un radio de sesenta (60) metros sobre la intención de la solicitud de permiso presentada.
Los aquí recurrentes acudieron ante A.R.P.E. y se opusieron al establecimiento de un Head Start en su urbanización. Ante sus reclamos, la agencia celebró una vista adjudicativa en la cual los vecinos que se oponían al proyecto, presentaron su evidencia, tuvieron oportunidad de contrainterrogar, rebatir argumentos y presentar prueba en contrario. Su argumento principal consistió en que el uso propuesto como Centro de Cuidados de Niños no estaba permitido de forma ministerial por el Reglamento de Zonificación Número 4 de la Junta de Planificación aprobado el 5 de noviembre de 2000 en Distritos clasificados R-3. Esbozaron además, sus preocupaciones respecto a la seguridad en el lugar, el estacionamiento y el tráfico de automóviles. Específicamente, se opusieron puesto que aumentaría el flujo vehicular como resultado del establecimiento del Centro.
Durante la vista, los Municipios de Salinas y Guayama presentaron varios testigos en apoyo a su contención. Entre ellos, declaró la presidenta del Consejo de Residentes del Residencial Bella Vista, residencial aledaño al proyecto propuesto. Esta testificó sobre la necesidad y conveniencia del servicio propuesto.
Aquilatada la prueba desfilada, la oficial examinadora que presidió la vista emitió un informe en el cual especificó las medidas de la estructura y sus colindancias. Se hizo un desglose de las actividades diarias que serían realizadas en el centro. Por otro lado, la oficial examinadora determinó que dado que el centro operaría con aire acondicionado, se limitarían los raidos. Además, se hicieron constar los planteamientos de los recurrentes a los efectos de que el centro no cumplía con los metros cuadrados requeridos por cada niño y que el área interna tampoco cumple con medidas requeridas; el problema de tránsito en el área lo cual sería exacerbado por el establecimiento del centro; y el problema que confrontan los vecinos ante la existencia de otro centro de cuido en el área, dentro de la urbanización. No obstante, se indicó que dicho centro cerraría operaciones próximamente.
En su informe, la oficial examinadora recomendó la otorgación del permiso de uso, sujeto a las siguientes recomendaciones de estricto cumplimiento:

"1. El centro educará y exigirá que sus empleados y usuarios estacionen sus vehículos en el área propuesta en el Residencial Bella Vista y obtendrá un documento que garantice el uso del área de estacionamientos.

*830
2. El Municipio de Salinas instalará reductores de velocidad en el área.

3. El centro operará con una matrícula máxima de veinte (20) niños y/o niñas.

4. El centro cumplirá con toda la ley, reglamentación federal y estatal relativo o especificaciones operativas. ”

La recomendación se fundamentó en las Secciones 13.00 y 74.03 del Reglamento, supra.
Acogiendo dicho informe, A.R.P.E. emitió una resolución mediante la cual autorizó el permiso solicitado. Lo anterior aludiendo a que se trataba de una actividad permitida como una de carácter ministerial bajo la Sección 13.00 del Reglamento. En la referida resolución se establecieron unos requisitos ha ser cumplidos por el concesionario del permiso, a saber:

“1. La parte proponente deberá comparecer a la Oficina, y solicitará por escrito la expedición del correspondiente permiso luego de leídas y cumplidas con las condiciones establecidas en dicha resolución.

2. Para cumplir con la Ley sobre Política Pública Ambiental se someterá el Formulario Ambiental ARPE 15.204 debidamente lleno en todas sus partes.

3. Se dará cumplimiento a las recomendaciones de la Oficial Examinador especificados en el inciso siete (7) de las anteriores Determinaciones de Hecho.

4. El uso se operará juiciosamente y en forma ordenada de tal manera que no se desvirtúe ni cambie el carácter residencial del área y no se altere la tranquilidad del sector.

5. No se permitirá aumentar ni intensificar las facilidades del uso autorizado.

6. La parte proponente queda advertida de que cualquier solicitud subsiguiente que se tramite para ampliar, intensificar u operar en forma distinta este uso en la propiedad, será juzgado como caso nuevo a tenor con los hechos específicos que estén presentes.

7. Que la autorización señalada es única y exclusivamente para el uso indicado; la misma no implica cambio alguno en el uso, ni transferencia del permiso a otra persona.

8. El uso institucional indicado no implica bajo ninguna circunstancia que se le esté cambiando la zonificación de la pertenencia.

9. Que de contemplar obras de construcción en la pertenencia, incluyendo la instalación de rótulos, se deberá someter el correspondiente proyecto ante la consideración de ese Centro de Servicios de la Administración de Reglamentos y Permisos en Guayama para ser evaluado a tenor con la reglamentación vigente aplicable.

10. Se apercibe al peticionario que de violarse cualesquiera de las condiciones antes señaladas, podrá constituirse base suficiente para revocar sumariamente el permiso de uso expedido. ”

Posteriormente y mediante moción a esos efectos, los recurridos indicaron que habían cumplido con lo siguiente:

“1. Aprobación de la Ordenanza Número Dos (2), Serie 2002-2003 que reserva específicamente un área de 
*831
estacionamiento para los usuarios y empleados del Centro de Cuidados de Niños; una zona de carga y descarga, y una zona de estacionamiento para impedidos.

2. Se construyeron los dos (2) reductores de velocidad requeridos.

3. El Centro está operando con una matrícula de veinte (20) niños (as).

4. Se sometió el Formulario Ambiental de la Administración de Reglamentos y Permisos 15.204.

5. Se está cumpliendo con las Leyes y Reglamentos Estatales y Federales y con los demás requerimientos de la Administración de Reglamentos y Permisos. ”

En virtud de lo anterior, los Municipios de Guayama y Salinas operan actualmente el referido Centro con una matrícula de veinte (20) niños(as).
Previo a la expedición del referido permiso, los aquí recurrentes habían presentado una demanda sobre interdicto ante el Tribunal de Primera Instancia. Solicitaron la paralización de cualquier acción dirigida a establecer el Centro Head Start en la Urbanización Salimar. Celebrada la vista, el tribunal dictó sentencia, desestimando la demanda incoada. Cabe señalar que los demandantes en dicha acción no presentaron oposición alguna al momento de establecerse el centro preescolar existente en la misma urbanización, en la residencia de una de las vecinas opositoras de epígrafe.
Dada la concesión del permiso de uso solicitado por los recurridos, los vecinos opositores presentaron moción de reconsideración ante A.R.P.E. Plantearon, entre otras cosas, que la resolución emitida no era una conforme a derecho por estar en contravención con lo dispuesto en las Secciones 13.00 y 84.05, Inciso 2 del Reglamento, Núm. 4 vigente, del 5 de noviembre de 2000, el cual no incluia los centros de cuidados diurnos como uno de naturaleza ministerial. Adujeron en su moción que el nuevo reglamento no había entrado en vigor dado que no había sido firmado por la Gobernadora. Por tanto, constituía un error conceder un permiso de uso bajo lo allí dispuesto. Por otro lado, indicaron que conceder un permiso sujeto a que se utilizaran los estacionamientos del Residencial Bella Vista constituía un acto ilegal toda vez que dichas facilidades son unas de naturaleza pública y para uso de los que allí residen.
La moción presentada fue declarada No Ha Lugar. A.R.P.E. apercibió en su resolución que los adversamente afectados por su determinación tendrían un término de treinta (30) días para presentar una solicitud de revisión administrativa ante el Tribunal de Circuito de Apelaciones.
Inconforme, los aquí recurrentes presentaron el recurso de epígrafe. En él le imputaron a A.R.P.E. errar al conceder un permiso de uso para operar un Centro Head Start en una zona R-3 como uno ministerial, sin que se hubiese solicitado, justificado y aportado prueba que ameritara las variaciones en uso. Así también, en el recurso se cuestiona la jurisdicción de este foro para revisar la resolución en controversia. Los recurrentes apoyan su petitorio en una versión del Reglamento de Zonificación Número 4 del 5 de noviembre de 2000.
Cada una de las partes de epígrafe utilizó una versión del Reglamento que en lo pertinente a la controversia que nos ocupa, tiene disposiciones contradictorias entre sí. En una de las versiones del referido reglamento se permite el uso ministerial de un centro de cuido de niños en las zonas clasificadas R-3, mientras que en otra versión no se permite dicho uso. Ante esta evidente contradicción emitimos una resolución mediante la cual.le solicitamos a la ARPE, la Junta de Planificación y la Junta de Apelaciones sobre Construcciones y Lotificaciones que nos aclararan ciertos aspectos relacionados a los planteamientos plasmados en el recurso, entre ellos, la existencia de distintas versiones del reglamento aplicable al caso que nos ocupa.
*832 Contando con el beneficio de la comparencia de las partes de epígrafe, la Junta de Planificación y la Junta de Apelaciones sobre Construcciones y Lotificaciones, procedemos a evaluar el expediente ante nuestra consideración.
II
El proceso de reglamentación de una agencia administrativa se encuentra esbozado en la Ley de Procedimiento Administrativo Uniforme (LPAU) 3 L.P.R.A. 2101, et seq. Para que las reglas y reglamentos de una agencia tenga fuerza de ley, es imprescindible que se adopten de conformidad a lo establecido en el estatuto. A esos efectos, la LPAU establece, entre otras cosas, que una vez se adopta el reglamento, la agencia deberá presentarlo ante la consideración del Secretario de Estado, quien posee la facultad de rechazarlo, modificarlo o aprobarlo. 3 L.P.R.A. §2128, 2131 y 2132. Si el reglamento es aprobado, el Secretario de Estado deberá publicar una síntesis de su contenido en dos (2) periódicos de circulación general, con expresión de su número, fecha de vigencia y agencia que lo aprobó. Hernández Rodríguez v. Colegio de Optómetras de Puerto Rico, _ D.P.R. _ (2002), 2002 J.T.S. 90, opinión de 24 de junio de 2002.
Para determinar la vigencia de una regla o reglamento de una agencia, debemos examinar las disposiciones de la LPAU. La sección 2128 de esta ley establece lo siguiente:
“Todo reglamento aprobado por cualquier agencia del Estado Libre Asociado de Puerto Rico deberá ser presentado en el Departamento de Estado en español en original y dos (2) copias. Como regla general los reglamentos comenzarán a regir a los treinta (30) días después de su radicación a menos que: (1) de otro modo lo disponga el estatuto con arreglo al cual se adoptare el reglamento, en cuyo caso empezará a regir el día prescrito por dicho estatuto; (2) como parte del reglamento, la agencia prescriba una fecha de vigencia posterior, si así lo dispusiere el estatuto que autoriza a la agencia a promulgar dicho reglamento, o (3) el reglamento sea uno de emergencia según lo dispone la see. 2133 de este título..., 3 L.P.R.A. §2128.'” Véase, Asociación de Dueños de Casas de La Parguera, Inc. y otros v. Junta de Planificación de Puerto Rico, _ D.P.R. _ (1999), 99 J.T.S. 81, opinión de 14 de mayo de 1999.
Como norma general, las reglas y reglamentos aprobados por las agencias comenzarán a regir a los treinta (30) días después de presentados en el Departamento de Estado. Sin embargo, la propia Ley de Procedimiento Administrativo Uniforme nos refiere a la Ley Orgánica de cada agencia para constatar que no se fije allí una fecha de vigencia para un reglamento en particular, distinta a la que como regla general aplica. Id.
De lo anterior podemos colegir que la vigencia y validez de un reglamento dependen de que el mismo sea registrado y aprobado en el Departamento de Estado.
Tomando como norte las doctrinas antes expuestas, dirigimos nuestra atención a los hechos que nos ocupan.
En el caso de autos las partes de epígrafe basaron sus respectivos argumentos en un mismo reglamento. Predicaron sus alegaciones esencialmente en la subsección 13.02 del aludido reglamento. No obstante, el contenido de dicha sección, según citado por las partes, no armonizaba entre sí. Es decir, mientras que los vecinos opositores argumentaron que dicha sección no permitía el establecimiento de un centro de cuidado de niños en una zona clasificada como R-3, A.R.P.E. y el Programa de Head Start del Gobierno Municipal de Guayama adujeron por el contrario, que precisamente dicha sección disponía para el uso ministerial de dicho centro en los Distritos R-3.
En atención a dicha divergencia, nos percatamos de que existen versiones incompatibles entre sí del Reglamento de Zonificación vigente, según enmendado en noviembre de 2000. La versión presentada y aprobada por el Departamento de Estado, contempla bajo el inciso 13.02(3) el establecimiento de centros de cuidado para niños en Distritos R-3. Por el contrario, la copia del reglamento provista por la Junta de *833 Planificación no contempla dicho uso en la referida sección. Tampoco se permite a manera de excepción. Se asume que la única forma en que se podría solicitar dicho uso sería mediante la figura de variación en uso, a tenor con la Sección 82.00.
En virtud del procedimiento de reglamentación esbozado en la LPAU, según discutido anteriormente, la validez de un reglamento depende necesariamente de que sea registrado en el Departamento de Estado y su consecuente aprobación. Su vigencia se determina entonces a partir de los treinta (30) días luego de su presentación ante el Departamento de Estado. No surge del expediente que se haya configurado excepción alguna a la regla general.
El Reglamento de Zonificación Número 4, aplicable al caso de marras, fue presentado ante la consideración del Departamento de Estado el 5 de octubre de 2000. El mismo se hizo vigente el 5 de noviembre del mismo año. La versión del reglamento que consta registrada en el Departamento de Estado es la que ha recibido la. publicidad requerida por la ley; por ende, se presume su validez. A tenor con lo anterior, resolvemos que dicha versión es la aplicable al caso de autos. No obstante, somos conscientes de que la presente situación ha causado disloques, confusión y gastos innecesarios en la ciudadanía.
Reconocemos la existencia de una nueva versión del Reglamento de Zonificación pendiente de la aprobación de la Rama Ejecutiva. Hasta tanto dicha reglamentación no cumpla con el palio de la Ley de Procedimiento Administrativo Uniforme, supra, no cobrará vigencia. Por tanto, dicho reglamento no es válido ni aplicable a la situación que nos ocupa.
Como expresáramos anteriormente, en la versión del reglamento registrada en el Departamento de Estado se permite el uso ministerial propuesto por el Programa de Head Start del Gobierno Municipal de Guayama. A la luz de lo dispuesto en dicho reglamento, A.R.P.E. emitió una resolución concediéndole el permiso solicitado.
III
Es principio jurisprudencial trillado que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, en vista de la vasta experiencia y conocimiento que poseen los mismos. Los tribunales apelativos deben ser cautelosos al intervenir con la apreciación de la prueba que realice dicho organismo cuando sus determinaciones se encuentran fundamentadas por prueba amplia y sustancial. En estos casos, la revisión judicial debe limitarse a determinar si el referido foro actuó de manera arbitraria e ilegal, o en una forma tan irrazonable que su actuación constituya un abuso de discreción. Castillo Camacho v. Departamento del Trabajo y Recursos Humanos, _ D.P.R. _ (2000), 2000 J.T.S. 154, opinión de 29 de septiembre de 2000; Comité de Vecinos Pro-Mejoramiento Inc., v. Junta de Planificación de P.R., _ D.P.R. _ (1999), 99 J.T.S. 32, opinión de 19 de marzo de 1999; Metropolitana S.E. (Atrium Plaza) y otros v. A.R.P.E., 138 D.P.R. 200 (1995); Fuertes y Otros v. A.R.P.E., 134 D.P.R. 947 (1993); Agosto Serrano v. Fondo del Seguro del Estado, 132 D.P.R. 866 (1993).
Las determinaciones de hechos realizadas por los organismos administrativos tienen a su favor una presunción de regularidad y corrección que prevalece mientras la parte que las impugne no produzca suficiente evidencia para derrotarlas. Rivera Concepción v A.R.P.E., _ D.P.R. _ (2000), 2000 J.T.S. 155, opinión de 29 de septiembre de 2000; Ramírez Rivera v. Departamento de Salud, _ D.P.R. _ (1999), 99 J.T.S. 47, opinión de 26 de marzo de 1999. A esos efectos, la Ley de Procedimiento Administrativo Uniforme en su Sección 4.5, 3 L.P.R.A. §2175, establece que las determinaciones de hecho realizadas por un organismo administrativo serán concluyentes si están sostenidas por evidencia sustancial que obre en el expediente administrativo. Metropolitana S.E. y Otros v. A.R.P.E., supra; Delgado Ramírez v. Nazario Ferrer, 121 D.P.R. 347 (1988).
Por otro lado, evidencia sustancial es aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión, aunque exista prueba conflictiva de la cual puedan inferirse conclusiones distintas a las *834 que la agencia adopta.
Para que un tribunal pueda decidir qué evidencia en el expediente no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión no está justificada por la evaluación justa del peso de la pmeba que tuvo ante su consideración. Hilton v. Junta de Salario Mínimo, 74 D.P.R. 670 (1953); Metropolitana S.E. y Otros v. A.R.P.E., supra; D. Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Colombia, Ed. Forum, 1993, págs. 527-544.
En el caso de autos, los recurrentes no nos han puesto en condiciones de ejercer nuestra discreción hacia su reclamo, por no haber demostrado, con evidencia suficiente, que la presunción de regularidad y corrección que tienen a su favor las determinaciones de los organismos administrativos ha quedado derrotada. En ausencia de prueba en contrario, estamos impedidos de pasar juicio sobre los alegados errores en el recurso y se impone la doctrina de presunción de corrección que acompaña a las determinaciones de hechos formuladas por la agencia.
Los recurrentes alegaron que A.R.P.E. le concedió un permiso de uso al Programa de Head Start del Gobierno Municipal de Guayama, en contravención a las disposiciones legales de la Sección 13.02 del Reglamento de Zonificación Número 4 del 5 de noviembre de 2002. Establecido que dicho reglamento, según la versión registrada en el Departamento de Estado y aplicable al caso de autos, ciertamente contempla el establecimiento de centros de cuidado de niños en zonas clasificadas R-3, resolvemos que sus argumentos son incorrectos.
En virtud de lo anterior, la agencia aprobó la concesión del permiso solicitado, sujeto al cumplimiento de varias condiciones. De acuerdo a sus criterios, la agencia entendió que las condiciones impuestas fueron cumplidas satisfactoriamente, aprobando por consiguiente el permiso de uso para establecer un centro de cuidado de niños en la urbanización.
Nada hay en el expediente ante nos que nos indique que A.R.P.E. actuó de manera irrazonable o arbitrariamente al conceder el consabido permiso de uso.
En mérito de lo expuesto, denegamos la expedición del auto solicitado.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Leda. Aida I. Oquendo Graulau Secretaria General