TEXTO COMPLETO DE LA SENTENCIA
Nory Berrios, en representación de su hijo, Axel Yamil Reyes Berrios (Reyes Berrios), solicita la revisión de la resolución emitida y notificada el 2 de junio de 2004 por una Jueza Administrativa del Departamento de Educación. Mediante el dictamen denegó el reembolso que la Sra. Berrios le solicita al Departamento de Educación de los gastos incurridos al proveerle educación especial privada a su hijo; ordenó la compra de servicios en el Instituto Modelo de Enseñanza Individualizado (IMEI) para Reyes Berrios por el semestre de *103 enero a mayo de 2004 y ordenó que el Comité de Planificación y Ubicación (COMPU) se reuniera antes de que finalice el semestre escolar y determine: (a) si puede ofrecer un Asistente de Servicios a Reyes Berrios en la Escuela Carmen Barroso, (b) si éste puede beneficiarse en un salón recurso y que coordine los servicios relacionados para el semestre escolar de agosto de 2004.
A instancias nuestra, el Departamento de Educación sometió su alegato en oposición, al que replicó la recurrente. Estando en condiciones de hacerlo, resolvemos.
I
En cuanto al trasfondo fáctico y procesal pertinente, la resolución recurrida dispone lo siguiente:
RESOLUCIÓN
A la celebración de la vista administrativa en su fondo señalada para el día 9 de febrero de 2004 en la División Legal del Departamento de Educación, comparecieron ambas partes de epígrafe. La parte querellante, el estudiante Axel Yamíl Reyes, estuvo representado por la Leda. Grace M. Santana Balado. La parte querellada estuvo representando por la Leda. Nivia Milián. Compareció como testigo por la parte querellante, la Sra. Norís Berrios, madre del menor y la Dra. Dyalma Ávila López, psicóloga clínica. Compareció como testigo de la parte querellada, la Sra. Myriam Mediavilla, Supervisora de zona (sic) de Educación Especial del Distrito Escolar de Toa Baja.
La controversia a resolverse si (sic) el Departamento de Educación debe rembolsar los gastos incurridos por los querellantes en IMEI y si procede la compra de servicios educativos privados en dicha institución.
Las partes sometieron documentos del expediente del menor y evaluaciones de las psicólogas.
Evaluada la prueba documental y testifical presentada por las partes, se emiten las siguientes determinaciones.
DETERMINACIONES DE HECHOS
1. El menor querellante Axel Yamil Reyes Berrios fue registrado en el Programa de Educación Especial el día 27 de octubre de 2000. De la minuta del registro, surge que el niño estaba en el proceso de evaluación bajo el Programa de Intervención Temprana y la cita para la transición fue pautada para el día 14 de noviembre de 2000.
2. El día 14 de noviembre de 2000, en el Distrito Escolar de Toa Baja, se levantó una minuta y surge de los acuerdos que se realizó la determinación de elegibilidad para el Programa de Educación Especial y se redactó el Programa Educativo Individualizado para servicios relacionados 2000-2001.
3. El día 14 de noviembre de 2000, en el Distrito Escolar de Toa Baja 2000, el Departamento de Educación determinó que se realizaran los referidos para iniciar los servicios de terapia del habla ocupacional, una evaluación psicológica y se realizara una prueba ABR.
4. Del Programa Educativo Individualizado de servicios relacionados 2000-2001, surge que Alex evidencia rezago en las destrezas preceptúales, lapso de atención corto que podría afectar su aprendizaje pre-escolar. Evidencia retraso moderado a severo en las áreas receptivas y expresas del lenguaje. Se recomendó terapia del habla dos veces por semana 30 minutos y terapias ocupacional una vez por semana por 45 minutos.
5. Axel Yamíl Reyes Berrios fue diagnosticado con el trastorno generalizado del desarrollo no específico.
*104 6.El menor ha asistido a varios pre-escolares privados. El Nursery Rayito de Amor fue un centro de cuidado diurno en el que estuvo antes de asistir al Colegio Lurgrea y luego al Colegio Adazul, en ningún de los cuales progresó en su desempeño escolar.
7. El día 30 de junio de 2003, la madre querellante solicita reubicación escolar para su hijo. Actualmente recibía los servicios en el Instituto de Enseñanza Individualizado. En la minuta de COMPU, surge que el Distrito Escolar de Toa Baja le recomendó a la madre querellante visitar las escuelas del Distrito Escolar con personal del Programa de Educación Especial con el propósito de seleccionar una escuela que más se ajustara a las necesidades del menor.
8. El día 11 de agosto de 2003, la madre querellante presentó una querella en la que alega no estar de acuerdo con los servicios de educación especial que recibe su hijo porque desde el 2002 no le han ofrecido las terapias del habla ocupacional y los servicios que le fueron referidos. Alegó que la ubicación ofrecida en agosto no estaba disponible, toda vez que su construcción no estaba terminada.
9. La madre solicitó los reembolsos y la compra de servicios en el Instituto Modelo de Enseñanza Individualizada por haber expuesto al menor en un estado de indefensión por no haber provistos los servicios y las ayudas.
10. El día 2 de septiembre de 2003 se señaló la primera vista administrativa de la querella de epígrafe. Hubo luego múltiples vistas.
11. El día 5 de noviembre de 2003 emitimos una Resolución Parcial y Orden para que la parte querellante visitara una nueva ubicación para el menor querellante. La parte querellante no aceptó la ubicación de la escuela Carmen Barroso por considerar que no era apropiada.
12. En la vista administrativa en su fondo de el(sic) día 6 de febrero de 2004, testificó la madre querellante, la Sra. Nory Berrios e informó que la Sra. Myriam Mediavilla le notificó que tenía una escuela maravillosa para un niño autista. Dicha escuela era la Antonio Sáez. La madre testificó que su hijo no tenía un diagnostico de autismo. Que luego de visitar esa escuela, radicó la querella. Es el día 11 de agosto de 2004 que le dan primera ubicación al menor. Luego se le ofreció la Escuela Carmen Barroso.
13. Del testimonio de la Dra. Avila López, surge que las ubicaciones presentadas por el Departamento de Educación no son apropiadas, porque tiene exceso de estudiante, no son grupos pequeños y no puede el menor recibir ayuda e instrucción individualizada.
14. Según su testimonio, el niño tiene una marcada dificultad para sostener la atención y su rezago en el área de lenguaje expresivo interfiere con su aprendizaje.
15. Del testimonio de la Sra. Miriam Mediavilla, surge que se acordó visitar la Escuela Carmen Barroso por que en dicha escuela, según su testimonio, tenía los servicios de terapia ocupacional y terapia de habla. Nunca se el(sic) informó que el niño iba a ser matriculado en IMEI. El Kinder regular de la Escuela Carmen Barroso tiene una matrícula mayor de quince (15) niños.
16. Del informe sometido en evidencia por la parte querellada de la Dra. Omayra Santiago, la perito (no compareció), para conocer el nivel de funcionamiento cognoscitivo del menor, surge que como elemento sobresaliente del menor la pobre concentración por lo que necesita de estructura constante y consistente. Sostiene que el estudiante debe estar ubicado con niños típicos en un grupo no mayor de quince (15) estudiantes.
*105 Consideradas estas determinaciones de hechos, la Jueza Administrativa emitió el dictamen recurrido. Para fundamentar su negativa a conceder la solicitud de la Sra. Berrios para que se le reembolsaran los gastos en que incurrió al matricular al estudiante en la institución privada IMEI para recibir servicios educativos especiales, expuso que de la prueba presentada surgió que la Sra. Berrios no notificó por escrito a la agencia dentro de los diez días laborables requeridos antes de matricular a su hijo en esa institución privada, su inconformidad con la ubicación propuesta por la Agencia y su decisión de matricular al estudiante en una escuela privada. Indicó, además, que de la minuta del 30 de junio de 2003 se desprendía que para esa fecha, Reyes Berrios yá estaba matriculado en IMEI y que, a pesar de ello, el Departamento de Educación ofreció como alternativa de ubicación la Escuela Carmen Barroso y la Antonio Sáez; que al visitar esta última, la Sra. Berrios estimó que no contaba con un salón disponible y que la ubicación no hubiese sido adecuada por la composición del grupo; y que “en estos momentos” en la Escuela Carmen Barroso no sería adecuada para Reyes Berrios.
Al ordenar que el Departamento de Educación comprara los servicios privados ofrecidos por IMEI durante el semestre de enero a mayo de 2004, expuso, únicamente, que el cambio de escuela durante el semestre de enero a mayo de 2004 iría en detrimento del estudiante. No fundamentó su orden para que el COMPU se reuniera antes de que finalizara el semestre escolar y determinara: (a) si puede ofrecer un Asistente de Servicios al estudiante en la Escuela Carmen Barroso, (b) si el estudiante puede beneficiarse en un salón recurso y que coordine los servicios relacionados para el semestre escolar de agosto de 2004.
Inconforme, la Sra. Berrios solicitó que se reconsiderara la decisión. Al no lograrlo, acudió ante este Tribunal. En su escrito de revisión, le imputó a la Jueza Administrativa la comisión de los siguientes errores: (1) declarar que no procedía el reembolso de gastos incurridos por la Sra. Berrios en la educación de su hijo en una escuela privada; (2) limitar la compra de servicios al segundo semestre a pesar de que la querella fue presentada a principios del año escolar, y (3) resolver que al terminar el segundo semestre escolar, el COMPU se debía reunir para determinar cuál será la ubicación del estudiante.durante el año escolar 2004-05.
Estudiados los alegatos sometidos, estamos en condiciones de resolver los méritos del recurso.
II
A
Al discutir su primer señalamiento de error, la Sra. Berrios sostiene, en síntesis, que la ausencia de notificación por sí sola no es causa definitiva para negar el reembolso que solicita la Sra. Berrios. Postula que es necesario que se den las circunstancias que menciona la Sección 612 de la “Individuals with Disbabilities Education Act” (IDEA), 20 USC sec. 1412(a)( 10)(C)(iii): si el niño se encuentra ubicado en la escuela pública; si los padres proponen trasladarlo a la escuela o facilidad privada y el distrito escolar puso a disposición del niño una alternativa de ubicación que cumpla con el requisito de proveer al niño la educación pública apropiada. Plantea que el requisito de notificación no aplica al caso de marras porque: 1) el menor nunca ha estado matriculado en una escuela pública, 2) nunca le han ofrecido la educación pública adecuada a que tiene derecho, aunque se inscribió en el Programa de Educación Especial el 27 de octubre de 2000, se determinó su elegibilidad y se redactó un plan educativo individualizado, y 3) nunca se celebró una reunión para preparar el PEI de Reyes Berrios.
B
Ciertamente, la IDEA, 20 U.S.C.A. see. 1400 et seq., es un estatuto aprobado por el Congreso de los Estados Unidos para asegurar la igualdad de oportunidad educativa a los menores con impedimentos para garantizar que cada niño con impedimentos tenga una educación pública gratuita y apropiada, con énfasis en la educación especial y servicios relacionados, y diseñada para satisfacer sus necesidades particulares. Esta legislación aplica a Puerto Rico por disposición expresa. 20 U.S.C.A. see. 1401(27). Obliga a los estados y territorios participantes a que: (a) le provean a los jóvenes con inhabilidades una educación pública y apropiada *106 que enfatice en proveerles la educación especial y los servicios relacionados diseñados para atender sus necesidades particulares; (b) los prepare para trabajar y llevar una vida independiente; (c) aseguren y protejan los derechos de los niños y niñas con impedimentos y los de sus padres o guardianes; (d) ayude a los estados, comunidades y agencias gubernamentales a proveer una educación adecuada para dichos niños, y (e) a que evalúe y asegure la efectividad de los esfuerzos para educar adecuadamente a los niños con impedimento. Aspira a educar al niño con impedimento en el ambiente menos restrictivo posible y proveer todos aquellos servicios relacionados que sean necesarios para hacer posible que se cumpla el plan educativo. 20 U.S.C. see. 1401(a)(16).
En Puerto Rico, la Asamblea Legislativa aprobó la Ley Núm. 51 de 7 de junio de 1996, mejor conocida como la “Ley de Servicios Integrales para Personas con Impedimentos” (LPEE o Ley Núm. 51), 18 L.P.R.A. see. 1351 et seq. Al igual que la IDEA, su fin es ayudar a los niños con impedimentos a desarrollar sus destrezas educativas y a fomentar el beneficio de la educación especial contemplada en el plan educativo individual para que se le brinde al estudiante aquellos servicios relacionados que se recomienden por especialistas. La educación especial que recibe cada niño elegible al programa consiste de un plan especialmente diseñado para satisfacer las necesidades individuales y particulares del niño con impedimento, incluyendo instrucciones en el salón, en el hogar, hospitales, otras instituciones y en cualquier otro lugar en el cual el niño con impedimento se desenvuelva. 18 L.P.R.A. see. 1351(14).
Conforme la Ley Núm. 51, una persona con impedimento es cualquier infante, niño, joven o adulto hasta los veintiún años de edad, inclusive, el que se le ha diagnosticado una o varias de las siguientes condiciones: retardación mental, problemas de audición incluyendo sordera, problemas del habla o lenguaje, problemas de visión incluyendo ceguera, disturbios emocionales severos, problemas ortopédicos, autismo, sordo-ciego, daño cerebral por trauma, otras condiciones de salud, problemas específicos de aprendizaje, impedimentos múltiples o retraso en el desarrollo de los infantes desde el nacimiento hasta los dos (2) años inclusive, y que por razón de su impedimento, requieran educación especial y servicios relacionados. 18 L.P.R.A. see. 1351(12).
Según la Ley Núm. 51, el niño deberá ser inscrito en un registro con las limitaciones que mantendrá el Programa de Educación Especial y será evaluado para determinar sus necesidades. Después de esa evaluación, se preparará un Programa Educativo Individualizado (PEI) para cada estudiante con impedimento y se le proveerán los servicios de educación especial. 18 L.P.R.A. see. 1355.
La política pública que se expone en la IDEA no requiere que el Estado o territorio pague por los costos de educación especial y otros servicios relacionados en una institución privada, si la agencia encargada pusiera a la disposición del niño una educación pública y apropiada y los padres optaran por la alternativa privada. La excepción a esta norma general es si la agencia consintió a referir al niño a una agencia privada o si es ubicado por la propia agencia educativa en una institución privada. En tales casos, será responsable del costo de la misma y deberá garantizarle los mismos derechos que cuando es ubicado en un sistema público. 20 U.S.C. see. 1412 (a)(10)(C).
Esta sección dispone lo siguiente:

“(C) Payment for Education of children enrolled in private schools without consent or referral by the public agency.

(i) In general. Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropiate public education available to the child and the parents elected to place the child in such private school or facility.

*107
(ii) Reimbursement for private school placement. If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropiate public education available to the child in a timely manner prior to that enrollment.

(iii) Limitation on reimbursement:

The cost of reimbursement described in clause (ii) may be reduced or denied-

(I) if-

(aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

(bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in division (aa);

(II) if, prior to the parents’ removal of the child from the public school, the public agency informed the parents, through the notice requirements described in section 1415(b)(7) of this title, of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation; or

(III) upon a judicial finding of unreasonableness with respect to actions taken by the parents. 20 U.S.C. sec. 1412 (a) (10) (C). ” (Énfasis nuestro).
Como puede verse, el párrafo (ii) faculta a un tribunal o juez administrativo a que determine si procede el reembolso, como excepción a la norma general expuesta en el sub-inciso (i) del inciso (c), si dicho funcionario determina que el niño recibió educación especial y servicios relacionados por autoridad de una agencia pública y los padres lo matriculan en una escuela elemental o secundaria privada sin el consentimiento o referimiento de la agencia pública si el tribunal o juez administrativo determina que la agencia no puso a disposición del niño “in a timely manner” una educción gratis pública, antes de la matrícula.
Por otra parte, la sección (iii) denominada en español "Limitaciones al reembolso", enumera los siguientes casos en que el tribunal o juez administrativo puede reducir o denegar el reembolso: (1) si en la más reciente reunión para discutir el PEI, los padres no informaron a la agencia su inconformidad con el plan propuesto y su determinación de matricular al estudiante en una institución privada; (2) si diez días laborables antes de matricular al estudiante en una institución privada, los padres no notificaron por escrito a la agencia la información descrita en el párrafo "aa", es decir, si no informaron por escrito su inconformidad con la ubicación propuesta y su decisión de matricular al niño en una escuela privada; (3) si con anterioridad a la remoción del estudiante de la escuela pública, la agencia notificó a los padres que el niño sería evaluado, pero los padres no permitieron que dicha evaluación se realizara, y (4) si un tribunal determina que la actuación de los padres fue irrazonable. 20 U.S.C. sec. 1412(a)(10)(C)(iii). 
El anterior párrafo (C) de la sección 1412 es el resultado de las enmiendas a la IDEA que en 1997 el Congreso de los Estados Unidos aprobó. De acuerdo al Informe Legislativo de la Cámara de Representantes, *108 House Report No. 105-95, a la pág. 92 (1997), el objetivo de dicho párrafo fue aclarar el alcance de la responsabilidad de las agencias con los niños con impedimentos que son ubicados por los padres en- escuelas privadas. Según este informe, el Congreso entendió que las enmiendas resolvían una serie de controversias que habían sido objeto de numerosos litigios en los tribunales. Para ello, entre otros puntos, limitaron el total de fondos que podían ser pagados a instituciones privadas a base de una fórmula proporcional. En ese mismo espíritu, condicionaron el reembolso a los padres por los gastos incurridos en instituciones privadas a ciertas ocasiones, entre ellas:
"... when a due process hearing officer or judge determines that a public agency has not made a free appropiate public education available to the child, in a timely manner, prior to the parents enrolling the child in that placement without the public agency's consent. [ ] Previously, the child must have had received special education and related services under the authority of a public agency." House Report No. 105-95, a la pág. 93.
Expuesto el derecho sustantivo aplicable, atendemos el primer error formulado por la Sra. Berrios.
C
En la causa ante nos, la Jueza Administrativa determinó que Reyes Berrios fue inscrito en el Programa de Educación Especial el 27 de octubre de 2000, evaluado, y que el 14 de noviembre del mismo año se determinó que era elegible y se redactó el PEI para el año 2000-2001. Determinó, además, que el Departamento de Educación promovió que se realizaran los referidos necesarios para que recibiera terapia del habla, ocupacional y evaluaciones sicológicas entre otras. Ni la resolución recurrida lo describe, ni la Sra. Berrios nos ha demostrado que sucedió con posterioridad.
Lo cierto es que según la resolución recurrida, el 30 de junio de 2003, la Sra. Berrios solicitó la reubicación escolar del estudiante y que el Distrito Escolar de Toa Baja le recomendó a la Sra. Berrios que visitara las escuelas del Distrito Escolar con personal del Programa de Educación Especial para seleccionar la escuela que más se ajustara a las necesidades de su hijo. No obstante, el 11 de agosto de 2003, la Sra. Berrios presentó la querella adjudicada mediante la resolución recurrida, solicitando el reembolso y la compra de servicios en IMEI, porque no le habían provistos los recursos públicos específicos que el estudiante necesitaba, aunque para junio de 2003 ya había matriculado a su hijo en IMEI, sin anunciárselo al Departamento de Educación y a pesar de que éste estaba poniendo a su disposición dos facilidades.
A pesar de ello, el 5 de noviembre de 2003, la Jueza Administrativa emitió una orden provisional para que la Sra. Bemos visitara la Escuela Carmen Barroso, pero ésta la rechazó aduciendo que no era apropiada. De la resolución recurrida, surge que la Jueza Administrativa recibió prueba conflictiva en cuanto a la adecuacidad de las escuelas a las que se refirió a la Sra. Berrios.
Ante este cuadro fáctico, resulta evidente que el Departamento de Educación puso a la disposición del estudiante una educación especial pública y apropiada en junio de 2003, pero que la Sra. Berrios optó voluntariamente por un alternativa privada, sin el consentimiento del Departamento de Educación o sin que éste lo hubiera autorizado expresamente. También es evidente que si el Departamento de Educación recibió la solicitud de reubicación en junio de 2003 y el Distrito Escolar respondió requiriéndole que visitara las dos escuelas antes indicadas en el mismo mes, lo hizo en un tiempo oportuno. Aunque la Sra. Berrios opina que las escuelas no eran apropiadas y ocultó que ya había matriculado a su hijo en IMEI en el mismo mes, su opinión personal no es suficiente para concluir que sí lo eran. Como cuestión de realidad, no nos ha demostrado que las escuelas sugeridas no fueran adecuadas para la fecha en que se le pusieron a su disposición.
Por otro lado, como Reyes Berrios no estaba recibiendo servicios de educación especial conforme el sub-inciso (ii) del inciso (C), no tiene derecho al reembolso que solicita, pues ello es uno de los requisitos para obtener el derecho a tal remedio de un juez administrativo.
*109 Como antes indicamos, éste tiene que concluir que la agencia no puso a disposición del niño “in a timely manner” una educación gratis y pública antes de que se matriculara al niño. Sin embargo, en este caso, la Jueza Administrativa concluyó indirectamente lo contrario, al determinar que después de que el 30 de junio de 2003 la Sra. Berrios solicitó la reubicación escolar de su hijo, el Distrito Escolar reaccionó favorablemente y le recomendó que visitara dos escuelas con el personal del Programa de Educación Especial para que seleccionara la escuela. Así pues, como la Jueza Administrativa determinó que el Departamento de Educación puso a su disposición la educación requerida, la Sra. Berrios no tiene derecho al reembolso que solicita.
III
Mediante el segundo error, la Sra. Berrios cuestiona el remedio que concedió la Jueza Administrativa limitando el pago de la educación especial privada en IMEI al semestre de enero a mayo de 2004 y que no lo hiciera extensivo desde la fecha en que presentó la querella el 11 de agosto de 2003. De primera intención, debemos consignar que dicha determinación luce contradictoria y carente de fundamentos de derecho claros y específicos.
La Jueza Administrativa consideró y concluyó, en síntesis, que la Escuela Carmen Barroso no era apropiada para la educación especial de Reyes Berrios para la fecha de la vista de la querella, que éste ya estaba matriculado en IMEI y que el cambio podía ser detrimental para el joven. Por esas circunstancias, optó por reconocerle el derecho a que el Departamento de Educación le pagara el semestre de enero a mayo de 2004 en IMEI. Dejó ver así que la concesión de este beneficio dependería del resultado de la evaluación que ordenaba.
La intención de la Jueza Administrativa fue la de no perjudicar a Reyes Berrios, permitiendo que por excepción permaneciera en el IMEI, aunque no tuviese derecho a ello, hasta que el Departamento de Educación evaluara la situación y proveyera ahora un recurso adecuado. Téngase presente que la Jueza Administrativa determinó durante la vista que la escuela que ofreció el Departamento de Educación no era en ese momento una ubicación adecuada para el menor y que IMEI cumple con las necesidades de éste.
Por último, coincidimos con el Departamento de Educación en cuanto a que, antes de efectuar pago alguno, la Sra. Berrios tiene que demostrar que los gastos incurridos son razonables y que están estrechamente relacionados con la educación de su hijo, aunque según la resolución recurrida, se demostró que la ubicación en IMEI es apropiada para Reyes Berrios.
Resolvemos que, en esas circunstancias, la Jueza Administrativa no fue irrazonable al limitar el reembolso de los gastos incurridos en el IMEI, luego de determinar que un cambio de escuela a mitad de año iría en detrimento del estúdiante. El error no se cometió.
IV
Al discutir el tercer error, la Sra. Berrios cuestiona que no existe determinación de hecho que explique el remedio concedido por la Jueza Administrativa al ordenar que el COMPU se reúna para que se gestione una ubicación apropiada para el menor. Cuestiona, sin discutirlo adecuadamente, la facultad de la Jueza Administrativa para conceder ese remedio. No se cometió el error.
Si bien es cierto que las determinaciones de hechos no parecen incluir alguna que explique específicamente el origen y la razón del remedio, ciertamente nos luce razonable y apropiado, ya que opinamos que el tenor de los estatutos que hemos considerados le imponen al Estado una obligación continua de velar por proveer a los niños la educación especial apropiada y pública que necesiten. Cónsona con tal intención, el modo más propio para cumplir esa obligación es el reexamen periódico de las necesidades del menor necesitado, la evaluación de los recursos disponibles y su adecuacidad. Impedir ese proceso, sería irrazonable y contraproducente.
En vista de lo anterior, este remedio no es irrazonable y no se justifica nuestra intervención con él.
*110 En el análisis final, compartimos el criterio del Departamento de Educación de que la Jueza Administrativa no actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyera un abuso de discreción. Rivera Concepción v. A.R.P.E., res. el 29 de septiembre de 2000, 2000 J.T.S. 155. En ausencia de una demostración de arbitrariedad, ilegalidad o irrazonabilidad de la Jueza Administrativa, le debemos deferencia a la interpretación estatutaria que ésta realizó. Fuertes v. A.R.P.E., 134 D.P.R. 947 (1993).
V
Por los fundamentos antes expuesto, se confirma la decisión recurrida.
Lo acordó el Tribunal y lo certifica la Secretaria.
Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones